BOSTON NEIGHBORHOOD TAXI ASSOCIATION *vs.*
DEPARTMENT OF PUBLIC UTILITIES & others[1]
(and a consolidated case[2]).

Suffolk. April 3, 1991. - July 17, 1991.

Present: LIACOS, C.J., ABRAMS, LYNCH, & GREANEY, JJ.

*Boston. Taxicab. Regulation. Statute*, Construction. *Department of Public
Utilities. Administrative Law*, Agency's interpretation of statute,
Agency's authority, Standing, Judicial review, Failure to raise issue
before agency.

On appeal to the Department of Public Utilities from the denial by the
police commissioner of the city of Boston of an application for a taxicab
medallion because the statutory maximum number of 1,525 had been
reached, the department, in acordance with the plain language of St.
1934, c. 280, was to determine the appropriate number of medallions to
be issued according to the "public convenience and necessity" standard,
unconstrained by the 1,525-medallion limit. [689-690]

On appeal to the Department of Public Utilities from the denial by the
police commissioner of the city of Boston of an application for a taxicab
medallion because the statutory maximum number of 1,525 medallions
had been reached, the department did not lack the authority to estab-
lish a limit higher than 1,526 because the applicant had only applied
for one medallion, where St. 1934, c. 280, did not limit the depart-
ment's discretion to fix the number of issuable medallions to the num-
ber of applicants before it. [690-691]

On appeal to the Department of Public Utilities from the denial by the
police commissioner of the city of Boston of an application for a taxicab
medallion because the statutory maximum number of 1,525 medallions
had been reached, the department lacked the authority under St. 1934,
c. 280, to permit an incremental release of medallions by phasing in
"increases in the medallion limit in a three-step process," rather than
fixing the medallion limit at a precise number. [691-693]

---

[1]Robert K. M. Lynch and the city of Boston, interveners.

[2]City of Boston Cab Association *vs.* Department of Public Utilities.

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on April 27, 1990.

The cases were reported by *Nolan*, J.

*Robert H. Quinn* for Boston Neighborhood Taxi Association.

*William M. Cloran* for City of Boston Cab Association.

*Thomas A. Barnico*, Assistant Attorney General, for Department of Public Utilities.

*Stephen S. Ostrach* for Robert K. M. Lynch, intervener.

*Stephen H. Clark*, Assistant Corporation Counsel, for the city of Boston, intervener.

*Elizabeth R. OuYang*, for Massachusetts Coalition of Citizens with Disabilities & others, amici curiae, submitted a brief.

LYNCH, J. The Boston Neighborhood Taxi Association (BNTA) and City of Boston Cab Association (CBCA), both organizations representing current taxi license owners, appeal an order of the Department of Public Utilities (department) authorizing the police commissioner of the city of Boston (commissioner) to issue additional hackney licenses. We affirm the order in part, and reverse in part.

Statute 1930, c. 392, as amended by St. 1933, c. 306, and by St. 1934, c. 280, authorizes the commissioner to regulate the taxi business in Boston in part by issuing hackney licenses, or medallions, authorizing the holder to operate a cab within the city. St. 1934, c. 280. *Town Taxi, Inc.* v. *Police Comm'r of Boston*, 377 Mass. 576, 578 (1979).[3] The statute empowers the commissioner to fix a maximum of medallions to be issued at a number not to exceed 1,525. St. 1934, c. 280.[4] If the commissioner denies an application for a medal-

---

[3] Statute 1963, c. 386, limits the right of persons who do not have a Boston medallion to solicit passengers within the city. *Town Taxi, Inc.* v. *Police Comm'r of Boston*, 377 Mass. 576, 578 (1979).

[4] In relevant part, St. 1934, c. 280, reads as follows.

"[The Boston police] commissioner shall, as soon as may be, fix a limit for the number of licenses to be issued under this section, which limit shall be based upon the number of licenses then issued and outstanding but shall not be in excess of fifteen hundred and twenty-five, and he may from time

lion because the maximum number has been reached, the applicant may appeal to the department, which then may "determine that the public convenience and necessity require a higher limit . . . and shall establish the limit so required." *Id.*

In September of 1988, Robert K. M. Lynch applied to the commissioner for a medallion. The application was denied because the commissioner had already distributed the maximum of 1,525 medallions, and Lynch appealed to the department. BNTA, CBCA, and the city of Boston were allowed to intervene in the proceedings before the department. On March 14, 1990, after lengthy hearings, the department determined that "300 to 500 additional medallions would be an absolute minimum number to meet the public convenience and necessity standard." The department decided to "phase in increases in the medallion limit in a three-step process" so that it could analyze "the degree to which public convenience and necessity has been met by [each] incremental increase in medallions." Accordingly, the department ordered that the maximum number of medallions be raised to 1,825 "effective immediately," to 1,925 within the following eighteen months, and to 2,025 a year after that. The order requires the city of Boston to file a "progress report" one year after the first 300 additional medallions are issued, whereupon the department will "evaluat[e] whether the public convenience and necessity require the completion of the second two increases of the phase-in." Both BNTA and CBCA appealed the department's order to the single justice of this court who consolidated the cases and reserved and reported the matter to the full court. He allowed the motions of Lynch and the city of

to time, after reasonable notice and a hearing, decrease the limit so fixed, but in no event to a number less than nine hundred.

"If an applicant is refused a license hereunder by reason of the fact that the maximum number of licenses limited hereunder has been issued, the department of public utilities, on petition of such applicant, may, after a hearing, determine that public convenience and necessity require a higher limit than that fixed by said commissioner or previously established by said department and shall establish the limit so required, in which case the limit set by said department shall be considered final until again changed as herein provided."

Boston to intervene, and granted a stay of the department's order pending appeal.

BNTA and CBCA urge that we reverse the department's order on the ground that the department lacked the authority to raise the medallion limit above 1,525. In addition, CBCA argues that the department exceeded its jurisdiction by increasing the limit beyond the one medallion Lynch requested. We reject these arguments. We conclude, however, that the department lacked the authority to order the increase in three stages.

1. BNTA and CBCA contend that St. 1934, c. 280, bars the department from raising the medallion limit above 1,525. The 1934 statute (see note 4, *supra*) provides, in part, that the commissioner shall fix the maximum number of medallions to be issued at a number not to exceed 1,525. In the next paragraph the statute states that, if an applicant is denied a license because the *"maximum number of licenses limited hereunder"* has been issued, the department may "determine that public convenience and necessity require a higher limit and shall establish the limit so required . . ." (emphasis added). St. 1934, c. 280. BNTA and CBCA suggest that the italicized phrase extends the 1,525-medallion cap to the department as well as the commissioner. We disagree.

BNTA's and CBCA's interpretation contradicts the plain language of the statute. The statute provides only that the department's discretion is limited by the "public convenience and necessity" standard. It states: "[The department] may . . . determine that public convenience and necessity require a higher limit than that fixed by [the] commissioner . . . and shall establish the limit so required . . . ." St. 1934, c. 280. To import the 1,525-medallion limit from the preceding paragraph would violate the rule of construction that "where the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present." *Massachusetts Medical Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 63 (1988), quoting *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982).

Furthermore, the text of the disputed phrase does not suggest that the 1,525-medallion limit applies to the department's decision. Giving the words of the statute their ordinary meaning, *Nationwide Mut. Ins. Co. v. Commissioner of Ins.*, 397 Mass. 416, 420 (1986), we read the phrase merely as a condition of the department's jurisdiction to entertain an appeal: *if* the commissioner refuses to issue a medallion "by reason of the fact that the maximum number of licenses limited hereunder [that is, under St. 1934, c. 280] has been issued," *then* the department may consider an appeal of that decision. St. 1934, c. 280. Logically, this prerequisite is unrelated to the criteria the department is to use in deciding such an appeal.

Accordingly, we conclude that the language of the statute clearly establishes that, in deciding an appeal such as Lynch's, the department is to determine the appropriate number of medallions to be issued according to the "public convenience and necessity" standard, unconstrained by the 1,525-medallion cap. We will not, as BNTA and CBCA urge, consider the legislative history or agency interpretations of the statute where its meaning is unambiguous. See *Massachusetts Community College Council MTA/NEA v. Labor Relations Comm'n*, 402 Mass. 352, 354 (1988); *McCarthy v. Commissioner of Revenue*, 391 Mass. 630, 633 (1984); *Hoffman v. Howmedica, Inc.*, 373 Mass. 32, 37 (1977). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *Massachusetts Community College Council MTA/NEA*, *supra*, quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917).

2. CBCA next contends that, even if the department had the authority to raise the medallion limit above 1,525, it lacked the authority to establish a limit higher than 1,526 because Lynch had only applied for one medallion. The short answer to this argument is that the statute does not limit the department's discretion to fix the number of issuable medallions to the number of applicants before it. The statute pro-

vides that the department "may, after a hearing, determine that public convenience and necessity require a higher limit than that fixed by [the] commissioner or previously established by [the] department and shall establish the limit so required . . . ." St. 1934, c. 280. Thus, the Legislature plainly directed that the public interest alone is to guide the department's determination. See *Zachs v. Department of Pub. Utils.*, 406 Mass. 217, 223-224 (1989) (discussing "public convenience and necessity" standard). Again, we reject as contrary to the statute's plain meaning the contention that the statute places a numerical limit on the maximum the department may set.

3. We agree with CBCA's final argument, however, that the form of the department's order exceeds the department's jurisdiction. The department ordered that the medallion limit be increased from 1,525 to 1,825 effective immediately. In addition, the department ruled that, "unless otherwise ordered by the Department," the limit would rise to 1,925 eighteen months from the date of the order, and to 2,025 one year thereafter. The department stated: "The Department may, at its discretion, solicit comments and/or reopen hearings" after the first 300 additional medallions are issued in order to determine "whether the public convenience and necessity require the completion of the second two increases of the phase-in." This three-step process does not conform to the requirements of St. 1934, c. 280, for two reasons.

First, under the plain language of the statute, an applicant's appeal is a prerequisite to the department's considering the medallion limit. The statute provides that the department acquires jurisdiction to consider the medallion limit only upon the "petition of [an] applicant" who "is refused a license . . . by reason of the fact that the maximum number of licenses limited hereunder has been issued." St. 1934, c. 280. See note 4, *supra*. The department circumvents this statutory requirement by finding that public convenience and necessity require an additional "300 to 500" medallions, and allowing for a later determination of whether that number will be 300, 400, or 500. This procedure violates the statute

because it permits the department itself to initiate the subsequent consideration of the medallion limit. Under St. 1934, c. 280, the department's involvement can only be triggered by a frustrated applicant's appeal.

Second, the statute does not permit an incremental "phase-in" of new medallions. The statute directs the department to "establish the limit . . . required" by "public convenience and necessity." We construe this to mean the number of medallions currently warranted by the public requirements, for it is unrealistic to think that the department can predict what the public need will be at some point in the future. In this case, however, the department's "phase-in" requires the release of 100 medallions one and one-half years in the future, and of 100 more medallions a year later. The statute does not ask the agency to prophesy the public's need for taxi service at these points.

We accord due weight and deference to an agency's reasonable interpretation of a statute within its charge. *Massachusetts Medical Soc'y* v. *Commissioner of Insurance*, 402 Mass. 44, 62 (1988). In addition, we acknowledge that an agency is deemed to have not only those powers expressly conferred by statute, but also those reasonably necessary to carry out its mission. See *Morey* v. *Martha's Vineyard Comm'n*, 409 Mass. 813, 818 (1991); *Town Taxi, Inc.* v. *Police Comm'r of Boston*, 377 Mass. 576, 586 (1979). We conclude, however, that the department's construction of St. 1934, c. 280, to permit an incremental release of medallions runs afoul of the statute's plain meaning, and therefore we reverse the agency's construction in this respect. The department's order and accompanying written opinion do not fix the medallion limit at a precise number.[5] Therefore we remand this case to the department to fix an appropriate, definite number of medallions in light of the current public con-

---

[5]The department found, in part: "Credible testimony of the City's witnesses leads us to conclude that the recommended range of 300 to 500 additional medallions would be an absolute minimum number to meet the public convenience and necessity standard. . . . [T]he addition of 300 to 500 taxicab medallions is more than justified by the record in this case."

venience and necessity, to take effect immediately upon the department's order.[6]

4. Finally, CBCA argues that the department erred in denying motions brought by BNTA for reconsideration and for clarification of the order. It is doubtful whether CBCA has standing to bring such a claim.[7] Standing to appeal a final order of the department is limited to an "aggrieved party in interest." G. L. c. 25, § 5 (1990 ed.). See *American Hoechest Corp.* v. *Department of Pub. Utils.*, 379 Mass. 408, 410-411 (1980); *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 780, 805 (1975). Because it does not affect the outcome of this case, however, we pass over the question whether, for purposes of the statute, CBCA may be considered "aggrieved" by the denial of motions it did not bring.

CBCA contends on appeal that the recent downturn in economic conditions justifies the department's reexamining whether the public interest will be served by additional taxicabs taking to the streets of Boston. However, neither BNTA nor CBCA raised this argument before the agency in support of the motions. Generally, a party is not entitled to raise an argument on appeal that was not raised before the administrative agency. *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 724 (1988). *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 382 (1985). Therefore, we decline to consider this claim for the first time here.

*Conclusion.* The department's findings and order are affirmed in all respects except the requirement that additional medallions be released in increments over two and one-half

.

---

[6]As this opinion merely calls for a clarification of the department's previous order, we do not imply that the department must hold new hearings or expand the record before it.

We do not reach CBCA's argument that the department's decision to authorize the issuance of additional medallions in three stages is unsupported by the record.

[7]BNTA itself does not argue that the department erred in denying its motions.

years. Accordingly, we remand the case to the department for further action consistent with section 3 of this opinion.[8]

*So ordered.*

---

[8]Robert K. M. Lynch argues that he is entitled to one of the newly authorized medallions. This issue is not properly before the court because Lynch never sought from the department a ruling that he was entitled to a medallion, nor has the commissioner in fact refused to issue him a medallion. For present purposes, therefore, Lynch's pursuit of a medallion is significant only as the catalyst for the department's consideration of the medallion limit. The statute does not specifically authorize the department to grant licenses to applicants turned down because the statutory cap on licenses has been reached, although that power may exist by implication. On remand Lynch ought to be allowed to amend his petition in order to raise the issue.

In addition, amici representing physically disabled persons ask this court to uphold parts of the department's order finding, in brief, that "it would be appropriate that some portion of the [new] medallions be expressly set aside for wheelchair-accessible vehicles." No party contests the department's findings and order pertaining to taxi service for the physically disabled, and therefore, this aspect of the department's findings and order also present no justiciable issue.