ROBERT K. M. LYNCH *vs.* POLICE COMMISSIONER
of BOSTON.

No. 96-P-1645.

Suffolk. May 20, 1997. - July 7, 1997.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

*Boston. Taxicab. Mandamus. Practice, Civil,* Action in nature of mandamus. *Statute,* Construction.

A judge of the Superior Court properly granted relief in the nature of mandamus to order the police commissioner of Boston to exercise his discretion to issue the 260 hackney medallions authorized in 1991 by the Department of Public Utilities, and this court modified the scope of that order to require that the police commissioner proceed immediately to implement a reasonable and fair process to expedite the prompt determination of applicant suitability and the granting of medallions to those who have been determined to be suitable. [110-113]

CIVIL ACTION commenced in the Superior Court Department on August 25, 1995.

The case was heard by *Carol Stroud Ball,* J., on motions for summary judgment.

*LaDonna J. Hatton* for the police commissioner of Boston.

*Todd S. Brilliant* for the plaintiff.

LAURENCE, J. This appeal represents another phase of the protracted wrangle that began in 1988 when the plaintiff, Robert K. M. Lynch, applied to the defendant police commissioner of the city of Boston for a license (or "medallion") to operate taxicabs (technically "hackneys") in the city. The commissioner denied Lynch's request because the maximum number of approved medallions (1,525, as set in 1934) had already been issued. Lynch appealed to the Department of Public Utilities (department), pursuant to St. 1934, c. 280, to authorize a higher number of medallions for the city.[1] After hearings, the department in March, 1990, ordered an

---

[1] In relevant part, St. 1934, c. 280, § 1, reads as follows:

immediate increase in the number of medallions to 1,825, with additional increases over a two and one-half year period to a total of 2,025.

On appeal of the department's order, the Supreme Judicial Court affirmed the department's findings and power to issue an order increasing the number of available medallions, but held that the statute did not permit an incremental "phase-in" of new medallions. *Boston Neighborhood Taxi Assn.* v. *Department of Pub. Util.*, 410 Mass. 686, 692-693 (1991). The court remanded the matter to the department "to fix an appropriate, definite number of medallions in light of the current public convenience and necessity, to take effect immediately upon the department's order." *Ibid.*

On October 11, 1991, the department proceeded to fix the number of medallions required by public convenience and necessity at 1,825 and ordered that the 300 additional medallions "be issued immediately." The commissioner sought neither modification nor judicial review of the department's October, 1991, order. However, except for agreeing to issue forty additional medallions for special wheelchair-accessible taxicabs pursuant to a settlement agreement in another action, the commissioner has refused to act on Lynch's 1992 reapplication for a medallion, or, indeed, on any other application pending since 1992.[2]

---

"[The Boston police] commissioner shall, as soon as may be, fix a limit for the number of licenses to be issued under this section, which limit shall be based upon the number of licenses then issued and outstanding but shall not be in excess of fifteen hundred and twenty-five, and he may from time to time, after reasonable notice and a hearing, decrease the limit so fixed, but in no event to a number less than nine hundred.

"If an applicant is refused a license hereunder by reason of the fact that the maximum number of licenses limited hereunder has been issued, the department of public utilities, on petition of such applicant, may, after a hearing, determine that public convenience and necessity require a higher limit than that fixed by said commissioner or previously established by said department and shall establish the limit so required, in which case the limit set by said department shall be considered final until again changed as herein provided."

[2]In an affidavit submitted with the commissioner's summary judgment motion, Joseph V. Saia, Jr., chief of the Boston police department's bureau of

In 1995, Lynch finally sought relief in the nature of mandamus, pursuant to G. L. c. 249, § 5, requesting that the Superior Court order the commissioner to issue the remaining 260 medallions authorized by the department. On Lynch's motion for summary judgment, a judge of the Superior Court in June, 1996, did precisely that. The commissioner has appealed, contending that the controlling statute invests him with unfettered discretion to decide not only to whom available medallions should be issued but also whether any should be issued at all.

On a number of critical issues, there is either no dispute or we are satisfied that the law is clear. Thus, both Lynch and the department agree with the commissioner that no one but the commissioner has the authority to issue licenses to particular individuals to engage in the taxi business in the city of Boston. As the department in its decision after remand has acknowledged, "[t]here is no guarantee whatsoever, that if the number [of medallions] is increased . . . a particular applicant would receive a medallion"; and, as Lynch recognizes, "the Commissioner has discretion . . . to determine who is a qualified person to hold a taxi medallion."

Further, the commissioner plainly has the duty to process applications for medallions that are filed with him. See St. 1934, c. 280, § 1 ("said police commissioner *shall* annually grant hackney licenses in said city to suitable persons, firms and corporations") (emphasis supplied). Compare the predecessor St. 1930, c. 392, § 4: "Said police commissioner . . . *may* annually grant hackney licenses . . . to suitable persons . . . ." (emphasis supplied). Cf. *Town Taxi, Inc.* v. *Police Commr. of Boston*, 377 Mass. 576, 578 (1979) (characterizing St. 1934, c. 280, as imposing "duties" on the commissioner, including the issuance of taxicab medallions). Finally, the commissioner does not and cannot dispute the general principle that mandamus properly lies to compel a public official charged by statute with a duty to act, including the police commissioner of Boston, to perform that duty if he has failed or refused to do so or has done so in a manner contrary to statutory authority, at least in the absence of extraordinary circumstances not shown to exist here. See *Pisco* v. *Police*

administrative services, outlined a proposed procedure whereby a small fraction of the remaining 260 medallions would be issued. To this court's current knowledge, no new medallions have been issued under this, or any other, procedure.

*Commr. of Boston*, 331 Mass. 539 (1954); *Concord* v. *Attorney Gen.*, 336 Mass. 17, 26-27 (1957); *Board of Health of Woburn* v. *Sousa*, 338 Mass. 547, 553 (1959); *Commonwealth* v. *Gordon*, 354 Mass. 722, 725-726 (1968). Cf. *Gannon* v. *Mayor of Revere*, 401 Mass. 232, 235 (1987).

The gist of the commissioner's appeal from the Superior Court judge's June, 1996, order, against the background of these established points, is that the judge illegally exceeded the proper scope of the mandamus remedy by compelling him to exercise his discretion in a specific way — i.e., by ordering him to "comply with the Department of Public Utilities Order on Remand from the Supreme Judicial Court . . . dated October 11, 1991, and issue immediately 260 new hackney licenses . . . which number constitutes the balance of the 300 new medallions ordered [by the department]." The commissioner asserts that he "is under no legal duty to perform the acts sought to be compelled, specifically the issuance of the additional medallions approved by the [department]." Although the commissioner is partially correct, we reject his contention that the judge's order must be reversed. Instead, that order need only be modified.

The well-settled rule that mandamus will not lie to compel a municipal officer to exercise his or her judgment or discretion in a particular way, see, e.g., *Urban Transp., Inc.* v. *Mayor of Boston*, 373 Mass. 693, 698 (1977), is inapplicable to the present circumstances under the governing regulatory scheme as construed by the Supreme Judicial Court in *Boston Neighborhood Taxi Assn.* v. *Department of Pub. Util., supra.* There the court unambiguously "conclude[d] that the language of the statute [St. 1934, c. 280] clearly establishes that . . . *the department is to determine the appropriate number of medallions to be issued* according to the 'public convenience and necessity standard' . . . . The statute directs the department to 'establish the limit . . . required' by 'public convenience and necessity.' We construe this to mean *the number of medallions currently warranted* by the public requirements . . . [not those that] the public [may] need . . . at some point in the future . . . . Therefore we remand this case to the department to fix an appropriate definite number of medallions *in light of the current public convenience and necessity, to take effect immediately upon the department's order*" (emphasis supplied). *Id.* at 690, 692-693. Pursuant to and consistent with this mandate, the department on October 11,

1991, fixed the number of hackney medallions currently required by public convenience and necessity at 1,825, 300 more than the prior limit (the existence of which had frustrated Lynch and precipitated this entire litigation), "effective immediately." To that extent — the determination that the Boston public *currently* needs the additional taxi licenses — the commissioner's discretion has been authoritatively reined.

Nowhere, however, did the Supreme Judicial Court decree, nor does the statute command, that those additional licenses required by current public be *issued* "immediately," as the department and the Superior Court judge purported to order, even when the immediacy is liberally interpreted, as the judge did, to mean up to six months from the date of her order. The statute does not prescribe any specific procedures or time limits for exercise of the commissioner's discretion in the granting of new licenses to applicants. Contrast the provisions of St. 1934, c. 280, § 1, with respect to applications for renewal of taxi licenses, which entitle a licensee to "a hearing" and statement of a "good cause" reason when the commissioner refuses to renew a license.[3] All that a first-time license applicant is entitled to is "fair treatment." *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston*, 405 Mass. 79, 82 (1989), quoting from *Ligget Drug Co.* v. *License Commrs. of N. Adams*, 296 Mass. 41, 52-53 (1936).

The commissioner's broad discretion must nonetheless be exercised to effectuate the purposes of the statute. Those purposes chiefly include, as discussed above: (1) the implementation of a process for the "annual" granting of licenses to "suitable" persons, by virtue of the plain language of the first sentence of § 4 of the enabling act, St. 1930, c. 392; and (2) the issuance, in the course of the reasonable and fair implementation of that licensing process, of the 260 additional medallions required by current public convenience and necessity. Further constraining the commissioner's discretion in this regard are the established principles that "[i]t is improper . . . for [him] simply to fail to act at all on applications for [medallions]," as he has apparently and inexplicably done for the past five years regarding the additional

---

[3]Even the Administrative Procedures Act (which is inapplicable to the Boston police department, *Boston Police Patrolmen's Assn., Inc.* v. *Police Commr. of Boston*, 4 Mass. App. Ct. 673, 675 [1976]), is silent as to the procedures to be followed by license-granting authorities with respect to the issuance of licenses in the first instance, see G. L. c. 30A, § 13, thereby leaving the matter to the provisions of specific statutes and agency regulations.

needed medallions; and that if he does not act "in a fair, judicial and reasonable manner" and "promptly," on pending applications, he "may be compelled to act by mandamus." *Board of Health of Woburn* v. *Sousa,* 338 Mass. at 553 (citations omitted). Cf. *MacGibbon* v. *Board of Appeals of Duxbury,* 369 Mass. 512, 520 (1976) (where agency has denied permit application on patently untenable grounds for thirteen years, justice and equity are served by ordering issuance of the permit).

We acknowledge that "relief in the nature of mandamus is extraordinary and may not be granted except to prevent a failure of justice in instances where there is no other adequate remedy." *Lutheran Serv. Assn. of New England, Inc.* v. *Metropolitan Dist. Commn.,* 397 Mass. 341, 344 (1986). We are also aware of "previous judicial admonitions against expansive use of [mandamus] in novel applications." *Doe* v. *District Attorney for Plymouth Dist.,* 29 Mass. App. Ct. 671, 675 (1991). "[I]t is a remedy that is to be used only as a last resort, when nothing else [will] work." *Id.* at 674. In light of those guidelines, and in the exercise of our discretion in the totality of the circumstances presented by this litigation, see *Coach & Six Restaurant, Inc.* v. *Public Works Commn.,* 363 Mass. 643, 645 (1973), we conclude that the June 13, 1996, order of the Superior Court in Civil Action No. 95-4686G should be modified to read as follows:

"1. Pursuant to G. L. c. 249, § 5, the police commissioner of the city of Boston is hereby ordered to comply with the Department of Public Utilities Order on Remand from the Supreme Judicial Court, dated October 11, 1991, and proceed immediately to implement the application process referred to in the May 10, 1996, affidavit of Joseph V. Saia, Jr., or such other comparable process (which includes appropriate and adequate notice to the public) as will enable and expedite the prompt determination of applicant suitability, with respect to the 260 additional hackney licenses (commonly known as 'taxi medallions') found by the department to be currently needed in the city of Boston. That process is to continue, without cessation and with reasonable dispatch, until all of those additional licenses have been granted to persons, firms, or corporations applying therefor who have been determined to be suitable by the police commissioner.

"2. To the extent that the police commissioner has not notified applicants for such licenses whose applications have been pend-

ing since 1992 that their applications have been rejected as stale and that they must file new application forms, the police commissioner shall immediately so notify them."

The second provision of this modified order is not, contrary to the commissioner's protestation, an impermissible infringement upon his discretion, but a limited and necessary precondition to the mandamus relief we deem appropriate, without which the remedy would be largely futile, and a failure of justice would result.

Finally, we affirm the denial by the Superior Court judge of the plaintiff's request for attorney's fees as unauthorized and unsupported by any statute, rule, case, or other "specific affirmative authority." *Griefen* v. *Treasurer & Recr. Gen.*, 390 Mass. 674, 676 (1983).[4]

The case is remanded to the Superior Court with instructions to enter a modified order and new judgment in conformity with this opinion. As so modified, the judgment is affirmed.

*So ordered.*

---

[4]Prior to 1974, the mandamus statute, G. L. c. 249, § 5 (as amended through St. 1949, c. 176), allowed a prevailing petitioner to recover "damages, including any salary or wages to which the petitioner may be entitled . . . with costs," a provision eliminated by St. 1973, c. 1114, § 291. Even when the statute contained that language, counsel fees were not recoverable as "damages." *Chartrand* v. *Riley*, 354 Mass. 242, 243-245 (1968). The present form of the statute is silent regarding costs, damages or fees.