## TRUST INSURANCE COMPANY *vs.* COMMISSIONER OF INSURANCE (No. 1) & another.[1]

No. 98-P-223.

Suffolk. October 12, 1999. - February 24, 2000.

Present: KASS, KAPLAN, & GELINAS, JJ.

*Motor Vehicle,* Insurance. *Insurance,* Motor vehicle insurance, Commissioner of Insurance. *Commissioner of Insurance. Mandamus. Practice, Civil,* Action in nature of mandamus, Declaratory proceeding, Statute of limitations. *Declaratory Relief. Administrative Law,* Exhaustion of remedies.

Discussion of G. L. c. 175, § 113H, and of the operation of Commonwealth Automobile Reinsurers under the "Plan of Operation" created thereunder. [618-619]

Mandamus was not the appropriate remedy to require the Commissioner of Insurance to perform a discretionary act, and, in any event, where the party seeking such relief had another effective remedy, the mandamus claim was properly dismissed. [621-622]

Where the Commissioner of Insurance took final action with respect to an insurer's complaint under art. X of the Commonwealth Automobile Reinsurers' Plan of Operation, the insurer was entitled under G. L. c. 175, § 113H(E), eleventh par., to seek judicial review [622-625], and in the circumstances of the commissioner's equivocal communication, eighty-four days was not an unreasonable time period for the insurer to file a complaint for declaratory relief seeking review [625-626].

Where the record of a proceeding for judicial review under G. L. c. 175, § 113H(E), provided no basis for a determination whether declaratory relief was warranted in the circumstances, the matter was remanded for further proceedings before the Commissioner of Insurance. [626-627]

CIVIL ACTION commenced in the Superior Court Department on June 23, 1994.

Motions to dismiss were heard by *Gordon L. Doerfer,* J.

*Francis J. Sally* for the plaintiff.

*Robert W. Mahoney (Mark G. Matuschak* with him) for Commonwealth Automobile Reinsurers.

---

[1]Commonwealth Automobile Reinsurers.

*Pierce O. Cray*, Assistant Attorney General, for Commissioner of Insurance.

KASS, J. Trust Insurance Company (Trust) was dissatisfied with the formula — and how it was devised — by which Commonwealth Automobile Reinsurers (CAR) distributes to motor vehicle liability insurers funds paid to CAR by insurers who withdraw from the Massachusetts market. After nineteen months of sparring at an administrative level, Trust brought an action in Superior Court for a declaratory judgment that the Commissioner of Insurance (commissioner) was required to promulgate a rule governing the distribution of "withdrawal payments" and that the current method by which withdrawal payments are distributed is unfair, unreasonable, and inconsistent with public policy. As alternative relief, Trust sought relief in the nature of mandamus. Each defendant filed a motion to dismiss the complaint under Mass.R.Civ.P. 12(b), 365 Mass. 755 (1974). A Superior Court judge allowed the motions: as to Trust's complaint for declaratory relief, on the ground that Trust had not in timely fashion exhausted available administrative remedies; and as to the count in the nature of mandamus, on the ground that the action asked of the commissioner lay in her discretion and could not be ordered by a court. Trust appealed from the judgment of dismissal.[2]

1. *Statutory and regulatory framework.* CAR is a by-product of G. L. c. 175, § 113H. That statute mandates adoption of a plan to "provide motor vehicle insurance to applicants who have been unable to obtain insurance through the method by which insurance is voluntarily made available." G. L. c. 175, § 113H(A), inserted by St. 1983, c. 241, § 17. The statute requires that such a plan provide for the fair assignment to insurance carriers of high risk customers. The plan, adopted by a governing committee established by § 113H, created CAR to administer this residual market. All motor vehicle insurers in Massachusetts participate in CAR. *Hartford Acc. & Indem. Co. v. Commissioner of Ins.*, 407 Mass. 23, 24 (1990). Article I of the statutorily mandated plan, entitled "Plan of Operation," describes the Plan of Operation as CAR's "charter and constitution." Under the plan, CAR's governing committee (governing committee) adopted "Rules of Operation." *Id.* at 25. *Trust Ins.*

---

[2]Judgment was entered on November 22, 1996, and Trust filed a timely notice of appeal. For reasons not apparent on the record, notice of assembly of the record did not issue until January 26, 1998.

*Co.* v. *Commonwealth Auto. Reinsurers*, 46 Mass. App. Ct. 657, 658 (1999). Rule 11 sets out how profits and losses shall be allocated among the insurance companies that participate in CAR. See *Hartford Acc. & Indem. Co.* v. *Commissioner of Ins.*, *supra.*

When an insurer withdraws from the Massachusetts automobile insurance market, it pays a lump sum to settle its future obligations to CAR as if it had stayed in the market for an assumed number of years.[3] This relieves the remaining companies of the burden of immediately funding the portion of CAR's market deficit previously paid by the withdrawing company. Those remaining companies assume the withdrawing company's deficit, and each remaining company, therefore, is entitled to its proportion of the withdrawing company's exit payment. CAR's practice since 1988 has been to distribute money received from a withdrawing company to the remaining companies in the same proportion that the remaining companies contribute to the CAR deficit.[4]

Paragraph 7 of art. X of CAR's Plan of Operation is the last item of administrative regulation that warrants mention. It provides that:

> "Any person aggrieved by any unfair, unreasonable, or improper practice of a Member Company or [CAR] may file a complaint with the Commissioner [of Insurance]. The Commissioner shall provide a hearing on each complaint filed . . . . After consideration of the evidence . . . the Commissioner may issue appropriate orders."

2. *Procedural history of Trust's claim.* Trust undertook to persuade the governing committee that the formula for disbursing proceeds from withdrawing companies was unfair in that it failed to account for the share of a withdrawing insurer's customers that a remaining insurer acquired. Theoretically, under CAR's practice, a remaining insurer might acquire none of the burden of the departed insurer, yet would receive a share of the

---

[3]This future financial obligation is based on the withdrawing company's share of the CAR deficit. CAR typically operates at a loss because the policies the participating companies cede to CAR are those that are unprofitable and which the companies, therefore, would not write voluntarily. Under rule 11, CAR calculates premiums, expenses, and losses on a quarterly basis and calls for or distributes funds depending on the quarterly result.

[4]That factor, under CAR's rule 11, was based on a weighted combination of each participating company's voluntary and involuntary share of the insurance market.

lump sum that the withdrawing company had paid into the CAR pot. Trust was singularly unsuccessful in persuading the governing committee that the disbursement formula was askew. The governing committee defeated by a vote of eleven to one a motion made by Trust to modify the disbursement formula. That occurred at a meeting held June 17, 1992.

Five months later, on November 23, 1992, Trust, claiming to act under art. X of CAR's Plan of Operation, filed a complaint with the commissioner asserting that CAR's disbursement formula of payments from withdrawing companies was unfair and unreasonable and that the governing committee was bound by statute to adopt a formal rule to govern those disbursements. The commissioner's response came in the form of a letter from her counsel, dated February 25, 1993, stating that Trust's complaint was untimely because not brought within thirty days of the governing committee's vote.[5] This was a reference to the limitations period contained in rule 20(B) of the Rules of Operation, and we shall have occasion to consider in this opinion whether that limitations period applied. Trust did not, however, receive a total brush-off. Simultaneously, the commissioner issued a notice of a hearing about:

> "the current administrative practice of CAR in disbursing settlement monies paid by withdrawing insurers pursuant to Rule 11 and to determine whether a settlement disbursement procedure should be codified as part of the CAR Rules and Plan of Operation."

On March 18, 1993, there was, indeed, a public hearing on that subject before a hearing officer of the Division of Insurance, following which the interested parties (it appears from the record these were CAR and Trust) submitted briefs. After that, the lump sum distribution question vanished into an administrative black hole. Occasionally, Trust rattled the commissioner's cage but nothing happened, except for receipt of assurances that something would. When a bit more than a year had gone by since the hearing, Trust wrote the commissioner asking that she render a decision, and that if she did not, Trust was bound to seek judicial relief. That seemed to act as a prod because the

---

[5]The February 25 letter does not appear in the record. We state its contents on the basis of allegations in Trust's complaint, allegations that we accept as true because the case is before us on the basis that the complaint did not state a claim for which relief can be granted.

commissioner on March 31, 1994, produced a written statement that included the following:

> "The hearing held was not, as your letter suggests, an adjudicatory hearing, but rather an informational hearing held for the purpose of soliciting information and opinion from interested individuals on public policy questions. Article X does not require that a written decision and order issue from such a hearing. However, as Trust holds a seat on the Governing Committee of CAR, I am sure that you are well aware that, at my suggestion, CAR is presently undertaking a review of all its rules and procedures."

Now Trust sought judicial relief, although not until June 23, 1994. As noted above, that proceeding ended in dismissal on motion.

3. *Relief in the nature of mandamus.* Relief in the nature of mandamus, as the Superior Court judge observed in his memorandum of decision, "lies only against a public official performing nondiscretionary acts." *Massachusetts Outdoor Advertising Council* v. *Outdoor Advertising Bd.,* 9 Mass. App. Ct. 775, 789 (1980). See *Urban Transp., Inc.* v. *Mayor of Boston,* 373 Mass. 693, 698 (1977); *Lynch* v. *Police Commr. of Boston,* 43 Mass. App. Ct. 107, 110 (1997). There must be "some particular act or acts" which a court "can order in definite terms and enforce if necessary." *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373, 375 (1941). See *Cavanaugh* v. *United States,* 640 F. Supp. 437, 441 (D. Mass. 1986).

Paragraph 6 of art. X of CAR's Plan of Operation provides that the commissioner "may examine from time to time the operation of [CAR] . . . in any manner [s]he finds convenient and expedient." The words "may," "convenient," and "expedient" all connote the discretionary nature of whether the commissioner shall inquire and what comes out of the inquiry. See *Turnpike Amusement Park, Inc.* v. *Licensing Commn. of Cambridge,* 343 Mass. 435, 437 (1962). Trust, in its complaint, calls upon the commissioner to acknowledge that something is amiss with the existing method of distributing settlement payments from withdrawing companies and presses her to order that CAR devise a better plan to be enshrined in a rule. That is not a specific, identifiable duty that a court may order or attempt to enforce. *Angelico* v. *Commissioner of Ins.,* 357 Mass. 407, 411

(1970) (mandamus is not the appropriate remedy to review correctness of the commissioner's exercise of discretion).

According to orthodox understanding of what constitutes a basis for an order in the nature of mandamus, the Superior Court judge could dismiss the mandamus count. Mandamus, however, may be a remedy to correct administrative inaction, i.e., to require the administrator to do something. *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 134-135 (1997). See *Safeway Stores, Inc.* v. *Brown*, 138 F.2d 278, 280 (Emer. Ct. App.), cert. denied sub nom. *Safeway Stores, Inc.* v. *Bowles*, 320 U.S. 797 (1943) (dictum suggesting order in the nature of mandamus would lie to compel the price administrator to move forward to a reviewable final order). It does not lie if another effective remedy exists. See *Coach & Six Restaurant, Inc.* v. *Public Works Commn.*, 363 Mass. 643, 645 (1973); *Doherty* v. *Retirement Bd. of Medford, supra.* Here, Trust included a more general request for relief, and not only does the mandamus count fall away but its fate is without consequence.[6]

4. *Whether declaratory relief is precluded by failure to exhaust administrative remedies.* It is the position of the commissioner, one to which the motion judge subscribed, that Trust cut itself off from judicial review at the first pass when it failed to file a notice of appeal with the commissioner from the June 17, 1992, vote of CAR's governing committee, declining to modify the disbursement system. This view of the case invokes CAR rule 20(B), which provides:

> "Any formal Governing Committee ruling may be appealed to the Commissioner by filing notice of appeal with [CAR] and the Commissioner within thirty days after the date of the ruling's issuance. The Commissioner may approve, modify, amend or disapprove the ruling or direct the Governing Committee to reconsider the ruling. In addition, the Commissioner may issue any other appropriate order, including granting the aggrieved party a new hearing."

By reason of not availing itself of this avenue, the commis-

---

[6]If the objective of a pleader is to require that a governmental authority act in accordance with law, one may fairly ask if relief in the nature of mandamus has any more than vestigial utility. For a discussion of the use of mandamus, see *Lynch* v. *Police Commr. of Boston*, 43 Mass. App. Ct. 107, 110-112 (1997).

sioner's argument continues, Trust failed to exhaust its administrative remedies and is entitled to no further relief.[7] The flaw in this reasoning is that rule 20(B) presupposes as a predicate a *formal ruling* of the governing committee made in accordance with rule 20(A). That antecedent paragraph requires a request for a formal hearing and ruling by the governing committee as to an alleged unfair, unreasonable, or improper practice of CAR. Trust had made no such request, and CAR had made no formal ruling. Rule 20(B) was not an open avenue to review by the commissioner.

Were rule 20, under the statutory and regulatory framework, the only means to challenge a CAR practice before the commissioner, one might say that Trust was bound to ask for a formal ruling under rule 20(A). Article X, however, significantly entitled "Rules," of CAR's Plan of Operation provides the alternative, previously adverted to, that allows any person aggrieved by an unfair, unreasonable, or improper practice to file a complaint with the commissioner. As the Plan of Operation, by self-proclamation in art. I, first par., is the "charter and constitution" of CAR, we do not read rule 20 as having superseded or limited the right to proceed directly to the commissioner.[8] Indeed, in the wake of the adverse eleven-to-one vote, a request by Trust for a formal hearing and ruling under rule 20(A) would have been an exercise in futility.[9] See *Ciszewski* v. *Industrial Acc. Bd.*, 367 Mass. 135, 141 (1975). The commissioner, therefore, was mistaken in declining to rule on Trust's art. X complaint because it had not been filed within thirty days of the governing committee's vote. Article X contains no such limitations period and authorizes a complaint based on an ongoing practice of CAR rather than a specific event marked by a date.

Coupled with the commissioner's dismissal of Trust's art. X complaint, however, was the announcement of hearings to

[7]Failure to take an available administrative step within the time prescribed by the administrative regulatory scheme may result in the denial of judicial review. Cella, Administrative Law and Practice § 1722 (1986). The idea is that letting an administrative remedy lapse should not open the door to judicial review, lest parties allow an administrative remedy to lapse for just that purpose.

[8]Rule 20(B) provides for an appeal to the commissioner; art. X allows filing a complaint in the first instance with the commissioner.

[9]The one vote on the governing committee in favor of consideration of a modification of the distribution formula was cast by the president of Trust.

consider modification of the distribution formula "and to determine whether a settlement disbursement procedure should be codified as part of the CAR Rules and Plan of Operation." As administrative proceedings were far from over, there was good reason for Trust not to use the dismissal of its complaint as the launching pad for judicial review. Had Trust attempted to move its grievance to court at that point it would infallibly have been met with a defense that it had failed to exhaust administrative remedies, as the further proceedings of which the commissioner had given notice had among their possible outcomes the redress of Trust's grievance.

Allowing administrative agencies[10] to complete their own decision-making processes and discouraging premature judicial intervention are the purposes that underlie the doctrine of exhaustion of administrative remedies. *Utica Mut. Ins. Co.* v. *Liberty Mut. Ins. Co.*, 19 Mass. App. Ct. 262, 264 (1985). Cella, Administrative Law and Practice § 1721 (1986). Jaffee, Judicial Control of Administrative Action 424-426 (1965). Schwartz, Administrative Law 762 (4th ed. 1994). Those purposes were broken down in *McKart* v. *United States*, 395 U.S. 185, 193-195 (1969), thus: (1) achieving full development of the facts before judicial review; (2) affording the agency an opportunity to use its experience and specialized knowledge; (3) avoiding premature interruption of administrative process; (4) conserving judicial resources; (5) discouraging disputing parties from ignoring the administrative agency and thereby degrading it; and (6) recognizing the autonomy of the administrative agency.

Given these purposes, there is more than a little irony in chiding Trust with having failed to exhaust its remedies. As we have seen, it participated in the hearing process and doggedly petitioned the commissioner for decision. When word in the form of a letter came from the commissioner on March 31, 1994, it was Delphic. She said neither "yes" nor "no," but only that she would issue neither a decision nor order. Given the nature of Trust's request, viz., modification and codification of the distribution formula, a "no action" announcement was ac-

[10]In *Trust Ins. Co.* v. *Commonwealth Auto. Reinsurers*, 46 Mass. App. Ct. at 661, CAR took the position that it was not an administrative agency. It has a hybrid public/private character, but it performs executive functions and, in the instant case, CAR appears enthusiastically to emphasize the administrative agency character of what it does. Were it otherwise, it could not raise failure to exhaust administrative remedies as a main defense.

tion; it meant the formula would remain as it was. See *West Broadway Task Force, Inc.* v. *Commissioner of Dept. of Community Affairs*, 363 Mass. 745, 751 (1973); *Environmental Defense Fund, Inc.* v. *Hardin*, 428 F.2d 1093, 1099-1100 (D.C. Cir. 1970) ("when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief"). See also *Cruz* v. *Commissioner of Pub. Welfare*, 395 Mass. 107, 115 (1985). Contrast *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985). That made the commissioner's communication of March 31, 1994, an act of finality so far as the issue raised by Trust's art. X complaint was concerned, and Trust was entitled under G. L. c. 175, § 113H(E), eleventh par., to seek judicial review of it. That statute provides: "Any ruling, order or decision of the Commissioner" in relation to CAR "shall be subject to review" in Superior Court.[11]

The statute contains no time limitation for such review. We are left to importing a reasonable time. *Commissioner of Corps. & Taxn.* v. *Malden*, 321 Mass. 46, 51 (1947). *Niles* v. *Boston Rent Control Administrator*, 6 Mass. App. Ct. 135, 151 (1978). What is a reasonable time is a question of law that a court determines "from the facts and circumstances of each particular case, including the time when a party first acquires knowledge of the facts upon which he bases his rights, the objects and purposes sought to be accomplished by a statute — if one is involved — requiring [the party] to take certain action, and in general whether due diligence has been exercised in taking the necessary action." *Commissioner of Corps. & Taxn.* v. *Malden*, *supra* at 51-52. As we observed in the preceding paragraph, the

---

[11]The full text of paragraph 11 of G. L. c. 175, § 113H(E), provides as follows: "Any ruling, order or decision of the commissioner under authority of this section shall be subject to review by appeal to the superior court department of the trial court of Suffolk county at the instance of any party in interest, which appeal shall be on the basis of the record of the proceeding before the commissioner. Said court shall have jurisdiction to modify, amend, annul, review or affirm such action, order, finding or decision, shall review all questions of fact and of law involved therein, and may make any other appropriate order or decree. Said court shall determine whether the filing of the appeal shall operate as a stay of any such order or decision of the commissioner."

communication of March 31, 1994, was equivocal.[12] In those circumstances, we consider the eighty-four days it took for Trust to file its petition for judicial review not an unreasonable period for Trust to have taken stock of where it was and to file a complaint. The failure of Trust to appeal more expeditiously did not cause any change of position by the commissioner in the interim.[13] See *Yetman* v. *Cambridge,* 7 Mass. App. Ct. 700, 707-708 (1979). Cf. *Cumberland Farms, Inc.* v. *Montague Economic Dev. & Indus. Corp.,* 38 Mass. App. Ct. 615, 622-623 (1995) (importing the sixty-day limitations period of an action in the nature of certiorari under G. L. c. 294, § 4); G. L. c. 30A, § 14(1) (setting a thirty-day limitations period from the final decision in a proceeding conducted under the State administrative procedure act). As to the form of the complaint, one for declaratory judgment, that is an appropriate procedural means by which to challenge whether an administrative agency has acted in accordance with law. *Williams* v. *Secretary of the Executive Office of Human Servs.,* 414 Mass. 551, 567 n.10 (1993).

It remains to consider what relief ought to be accorded Trust. The record as developed provides no basis for a court to decide whether the existing distribution formula and the procedure by which it is derived are fair, whether the reforms for which Trust has pressed are more fair, or whether some other formula is best. It is not too much to ask of the commissioner that she state why the formula chosen is preferable to others, and whether the formula should be enshrined in CAR's Plan and Rules of Operation. One might imagine, for example, that a distribution formula that lines up with the formula for assigning profits and losses to the members of CAR is more efficient than different formulae for different kinds of distributions. In the absence of some articulation of reasons, the commissioner's action in this case takes on the character of arbitrary decree.[14] See *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of*

---

[12]We have determined that the commissioner's "no action" letter was tantamount to action, but one may understand if that was not instantly apparent to Trust.

[13]The Legislature may consider whether it wishes to insert in G. L. c. 175, § 113H(E), eleventh par., a statute of limitations based on G. L. c. 30A, § 14(1), or G. L. c. 249, § 4 (action in nature of certiorari).

[14]The commissioner's explanation for saying nothing about the underlying issue of the distribution formula was that the hearings had been "informational" not "adjudicatory." As the hearing was responsive to Trust's protest

*Randolph*, 19 Mass. App. Ct. 296, 301 (1985). If that were in the commissioner's power, the judicial review for which § 113H(E) provides would be pointless. Whether the formula the commissioner chooses to approve is enshrined in a rule or is applied consistently through a published practice of CAR's governing committee need not be determinative. Cf. *Trust Ins. Co.* v. *Commonwealth Auto. Reinsurers*, 46 Mass. App. Ct. at 662 (describing a subject that art. I of the Plan of Operation assigned to rule making). See *Atlas Distrib. Co.* v. *Alcoholic Bevs. Control Commn.*, 354 Mass. 408, 413-415 (1968).

The judgment of dismissal is vacated and judgment shall be entered remanding the case to the commissioner for further proceedings consistent with this opinion.

*So ordered.*

---

that the existing formula was unfair, the character of the proceedings before the commissioner bore substantial characteristics of an adjudicatory one.