ROBERT K. M. LYNCH *vs.* POLICE COMMISSIONER OF BOSTON.

No. 99-P-1318.

Suffolk. May 9, 2001. - June 5, 2001.

Present: GREENBERG, SMITH, & MASON, JJ.

*Boston. Taxicab. Contempt. Practice, Civil,* Contempt. *Mandamus.*

Statute 1997, c. 152, the Convention Center Act, did not eliminate the statutory basis for a modified mandamus order against the police commissioner of the city of Boston directing him to implement a process for the issuance of additional hackney medallions determined by the Department of Public Utilities to be needed in Boston. [775-776]

A Superior Court judge properly dismissed a complaint for contempt against the police commissioner of the city of Boston, alleging that he had improperly failed to comply with a prior modified mandamus directing him to implement a process for the issuance of additional hackney medallions, where the mandamus order did not give the commissioner clear and unequivocal notice concerning the specific steps he was required to take to issue the additional medallions, or the time period within which he was required to issue them [776-778], and where the complaint failed to allege any present disobedience of the modified order, as distinct from a possible future disobedience of the order [778].

CIVIL ACTION commenced in the Superior Court Department on August 25, 1995.

Following review by this court, 43 Mass. App. Ct. 107 (1997), a complaint for contempt, filed on December 21, 1998, was heard by *Linda Giles,* J.

*Loretta M. Smith* for the plaintiff.

*Kevin Batt* for the defendant.

MASON, J. Robert K. M. Lynch appeals from a judgment dismissing his complaint for contempt against the police commissioner of the city of Boston (commissioner). The complaint alleged that the commissioner had improperly failed to comply with a prior order directing him to implement a process for the issuance of an additional 260 hackney medallions (also known

as taxicab licenses) determined by the Department of Public Utilities (department) to be needed in Boston. We affirm the dismissal.

*Facts.*[1] The present contempt action is the latest in a series of proceedings which began in the late 1980's. At that time, Lynch applied to the commissioner for a medallion to operate a taxicab in Boston, but his application was denied because the maximum number of approved medallions had been issued. Lynch promptly appealed to the department to authorize a higher number of medallions pursuant to the provisions of St. 1934, c. 280 (chapter 280).[2] After holding hearings, the department in March, 1990, ordered an immediate increase in the number of medallions from 1,525 (which had been approved in 1934) to 1,825, with additional increases over a two and one-half year period to a total of 2,025.

On appeal of the department's order, the Supreme Judicial Court affirmed the department's findings and power to issue an order increasing the number of available medallions, but held that the statute did not permit an incremental "phase-in" of new medallions. *Boston Neighborhood Taxi Assn.* v. *Department of Pub. Util.*, 410 Mass. 686, 692 (1991). The court remanded the matter to the department "to fix an appropriate, definite number of medallions in light of the current public convenience and necessity, to take effect immediately upon the department's order." *Id.* at 692-693.

The department proceeded to fix at 1,825 the number of

[1]We draw the facts largely from *Lynch* v. *Police Commr. of Boston*, 43 Mass. App. Ct. 107 (1997).

[2]In relevant part, St. 1934, c. 280, § 1, reads as follows:

"[The Boston police] commissioner shall, as soon as may be, fix a limit for the number of licenses to be issued under this section, which limit shall be based upon the number of licenses then issued and outstanding but shall not be in excess of fifteen hundred and twenty-five, and he may from time to time, after reasonable notice and a hearing, decrease the limit so fixed, but in no event to a number less than nine hundred.

"If an applicant is refused a license hereunder by reason of the fact that the maximum number of licenses limited hereunder has been issued, the department of public utilities, on petition of such applicant, may, after a hearing, determine that public convenience and necessity require a higher limit than that fixed by said commissioner or previously established by said department and shall establish the limit so required, in which case the limit set by said department shall be considered final until again changed as herein provided."

medallions required by public convenience and necessity, and ordered that the additional 300 medallions be "issued immediately." The commissioner, however, issued only forty additional medallions for special wheelchair-accessible taxicabs pursuant to a settlement agreement in another action. Accordingly, in 1995, Lynch brought a mandamus action requesting that the Superior Court order the commissioner to issue the remaining 260 medallions authorized by the department. A judge of the Superior Court ordered the commissioner to issue the remaining medallions "immediately."

On the commissioner's subsequent appeal to this court, we noted that the commissioner was required to effectuate the purposes of chapter 280, including the issuance of the additional medallions required by public convenience and necessity, but that nothing in either chapter 280 or the Supreme Judicial Court decree deprived the commissioner of discretion to prescribe the specific procedures and time limits for issuance of the medallions. *Lynch* v. *Police Commr. of Boston*, 43 Mass. App. Ct. 107, 111 (1997). We therefore held that the Superior Court's order should be modified to require the commissioner to immediately implement a "process" to enable and expedite the prompt determination of applicant suitability, and to continue such process "without cessation and with reasonable dispatch" until all the additional licenses had been granted. *Id.* at 112.

On remand, the Superior Court judge entered such a modified order on August 12, 1997. The commissioner thereafter notified all persons with pending applications for taxi medallions that those applications were "stale" and that new applications were required to be submitted no later than December 12, 1997. More than 2,000 persons responded to the commissioner's notice by the deadline date and the commissioner began to screen those applications for eligibility, a process that continued until May, 1998.

In the meantime, on November 17, 1997, the Legislature enacted the Convention Center Act, St. 1997, c. 152. Section 20 of the Act provides that, in order to raise funds for a new convention center in Boston, all taxi medallions then or thereafter available for issuance by the commissioner "shall be issued by public auction, public sale, sealed bid or other

competitive process . . . ." Section 20 further provides that such licenses "shall be issued in such numbers, and at such times or prices . . . as [the] commissioner determines in his sole discretion."

After notifying the public of the change in the law, the commissioner on November 27, 1998, announced that seventy-five taxi medallions[3] would be offered for sale by public auction on January 15, 1999. In response to this notice, Lynch obtained a "bid registration packet," and subsequently went to a bidder's conference held at John Hancock Hall in Boston on December 16, 1998. Two days later, on December 18, 1998, Lynch went to the hackney carriage unit at Boston police headquarters, and spoke to Captain Albert Sweeney, inspector of carriages for the unit. Lynch asked Sweeney when the additional 185 taxi medallions would be issued and, according to Lynch, Sweeney responded that "we have to see how this auction goes," that no plans for the issuance of the remaining medallions currently existed, and that it was "up to the Mayor and Police Commissioner."

Promptly thereafter, on December 21, 1998, Lynch brought his complaint for contempt and, in connection therewith, requested the issuance of a summons to the commissioner. See Mass.R.Civ.P. 65.3, 386 Mass. 1245 (1982). After holding a hearing, a Superior Court judge (not the judge who had issued the mandamus) determined that no summons should issue on Lynch's complaint because (1) the August 12, 1997, modified order at issue was insufficiently definite to be enforced through contempt proceedings; and (2) the commissioner had not committed an "undoubted" violation of that order in any case. The judge accordingly declined to issue the summons and entered judgment dismissing the complaint.

1. *Effect of Convention Center Act.* Although the judge did not rely on the Convention Center Act in dismissing Lynch's complaint, the commissioner asserts that the Act eliminated the statutory basis for the modified order against him because it eliminated the department's authority to set the number of medallions to be issued. More specifically, the commissioner

---

[3]The medallions for sale included seventy-three taxi medallions and two wheelchair-accessible vehicle carriage licenses.

contends that, whereas chapter 280 authorized the department to raise the number of medallions higher "than that fixed by [the] commissioner," section 20 of the Convention Center Act gives the commissioner "sole discretion" to determine the number of medallions to be issued notwithstanding the provisions of any other statute.

In fact, section 20 of the Convention Center Act, St. 1997, c. 152, provides in pertinent part only as follows:

> "Notwithstanding the provisions of any general or special law to the contrary, all [taxicab medallions] then or thereafter available for issue . . . shall be issued by public auction . . . . Said licenses shall be issued in such numbers, and at such times or prices, . . . as [the] commissioner determines in his sole discretion."

The statute provides, in essence, that all medallions "available for issue" by the commissioner shall be issued by public auction in such numbers, and at such times and prices, as the commissioner shall determine in his sole discretion. The statute does not purport to change or affect the methods by which the number of medallions "available for issue" by the commissioner shall be determined. Nor does it purport to abrogate the commissioner's basic obligation to issue in some reasonable manner the number of medallions found by the department to be needed. We think that if the Legislature had intended any such result, it would have said so far more explicitly. See *Ferullo's Case*, 331 Mass. 635, 637 (1954) ("It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed"). We therefore reject the commissioner's argument that the Convention Center Act abrogated the legal basis for the modified mandamus order against the commissioner.

2. *Dismissal of complaint.* To constitute civil contempt, there must be a "clear and undoubted disobedience of a clear and unequivocal command." See *Allen* v. *School Comm. of Boston*, 400 Mass. 193, 194 (1987). Civil contempt "can be used as an enforcement mechanism only if the underlying order is sufficiently clear, so that the party to be bound is provided with adequate notice of the required or prohibited activity." See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 565-566

(1997). Consistent with these basic principles, injunctions have been deemed too ambiguous to support a contempt proceeding where the scope of the order has been defined by terms subject to discretionary judgment.

For example, in *Smith* v. *Atlantic Properties, Inc.*, 12 Mass. App. Ct. 201, 210 (1981), this court noted that an order requiring a board of directors "to declare a reasonable dividend at the earliest practical date and reasonable dividends annually thereafter" almost certainly failed to constitute "a precise, clear, and unequivocal command which (without further explanation) would justify enforcement by civil contempt proceedings." Similarly, in *Warren Gardens Hous. Coop.* v. *Clark*, 420 Mass. 699, 701 (1995), the Supreme Judicial Court held that an order requiring a parent "adequately [to] supervise" her "children" was not sufficiently definite to permit the parent to be held in contempt when her adult children began selling drugs and engaging in other inappropriate behavior in the housing complex where the parent resided. The court reasoned that the order did not provide "clear and unequivocal notice . . . concerning what steps [the parent] was required to take to prevent her adult sons from engaging in conduct inimical to the residents or management personnel of [the housing complex]." *Ibid.* See *Pendoley* v. *Ferreira*, 345 Mass. 309, 310, 314 (1963) (injunction referring to "unreasonable manner," "material interfer[ence,]" and "reasonable enjoyment" rejected as too generally phrased).

Similarly, in the present case, we do not think that the modified mandamus order gave the commissioner clear and unequivocal notice concerning the specific steps he was required to take to issue the additional medallions, or the time period within which he was required to issue them. Indeed, as we explained in our prior decision, the whole point of our modification of the order was to preserve, to the fullest extent established by law, the commissioner's discretion to determine the time and manner for the issuance of the medallions, while at the same time making clear to him that he was required to issue the additional medallions within some additional reasonable period of time. In such circumstances, we think the Superior Court judge was correct in concluding that the modified order was not subject to enforcement by a contempt action. Rather, to the extent Lynch

believed, even in spite of the new public auction requirements established by the Convention Center Act, that the commissioner was proceeding unreasonably, he should first have petitioned the Superior Court for further modification of the order to impose more specific timetables or deadlines on the commissioner.

Lynch also stated no facts in his complaint indicating that the commissioner had actually disobeyed the modified order. The modified order directed the commissioner only to establish a "process" for determining applicant suitability, and to continue such process without cessation until all the medallions had been issued. Although the complaint alleged that the commissioner had not yet formulated any plans for issuing additional medallions after the initial seventy-five had been auctioned in January, 1999, it did not allege that the commissioner had actually ceased determining applicant suitability or issuing medallions. The complaint therefore failed to allege any present disobedience of the modified order, as distinct from a possible future disobedience of the order. We think the complaint was properly dismissed for this additional reason as well. See *Crystal, petitioner,* 330 Mass. 583, 589-590 (1953) (statement of intent to disobey order does not constitute actual disobedience of such order for purposes of contempt proceeding).

*Judgment affirmed.*