443 Mass. 837 (2005)                                                    837

The Locator Services Group, Ltd. *v.* Treasurer and Receiver General.

The Locator Services Group, Ltd. *vs.* Treasurer and Receiver General & another.[1]

Suffolk. December 7, 2004. - April 11, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Eminent Domain*, Interest. *Treasurer and Receiver General. Statute,* Construction. *Fiduciary. Mandamus. Governmental Immunity. Practice, Civil,* Statute of limitations, Action in nature of mandamus, Affidavit. *Evidence,* Hearsay.

This court concluded that the plain terms of G. L. c. 79, § 7D, which governs the Treasurer's obligation to invest unclaimed eminent domain awards for the benefit of unknown claimants, required the Treasurer to invest such awards in one or more of the investment vehicles specified in § 7D, and to remit to those entitled all interest actually earned on those investments, whatever that amount is and whether it accrued as simple or compound. [845-851]
In an action in the nature of mandamus ordering the Treasurer to pay additional interest on certain unclaimed eminent domain awards that he had invested pursuant to G. L. c. 79, § 7D, while no genuine issue of material fact existed concerning the Treasurer's liability for all interest actually earned on his investments, there remained genuine issues of material fact as to the amount of interest actually earned by the Treasurer on his investment of the unclaimed awards after 1993, and whether that interest was greater than the amount paid to the claimants, as well as whether the Treasurer committed a breach of his statutory obligations by not investing those awards before 1993 [851-852], and therefore, mandamus relief was appropriate [852-856]; moreover, to the extent that questions remained regarding what the Treasurer did with the awards during the period in question and how much additional interest, if any, was owed to the claimants, the claimants were entitled to an accounting [856]; further, the doctrine of sovereign immunity did not bar a claim that the Treasurer had violated § 7D [856-858].
In a civil action brought on behalf of claimants of certain unclaimed eminent domain awards against the Treasurer, alleging that he had failed to satisfy his fiduciary duty to invest the proceeds of the unclaimed awards with reasonable prudence, the judge erred in denying the Treasurer's motion for summary judgment, where the plain terms of G. L. c. 79, § 7D, which

---

[1]The Commonwealth was joined as a defendant pursuant to G. L. c. 79, § 10A, which provides that in actions to compel compliance with eminent domain awards, the body politic or corporate on whose behalf the taking was made shall be joined.

governs the Treasurer's obligation to invest unclaimed eminent domain awards for the benefit of unknown claimants, imposed no fiduciary or quasi fiduciary duty on him, and there existed no other special relationship between the claimants and the Treasurer that might warrant the imposition of a fiduciary duty. [858]

This court determined that a three-year statute of limitations applied to claims brought under G. L. c. 79, § 10A, to enforce the Treasurer's obligation under G. L. c. 79, § 7D, to pay the proper interest owed on his investment of unclaimed eminent domain awards for the benefit of unknown claimants [858-860], and that the limitations period should run from the date that the claimants received their allegedly insufficient interest payments [860-861]; further, this court remanded the question whether the claimants in a civil action seeking additional interest on certain invested awards timely filed the action, where, given conflicting testimonial and documentary evidence, there existed a genuine issue of material fact regarding whether the parties entered into a verbal tolling agreement and, if so, whether it was revoked [861-864].

In a civil action, a Superior Court judge properly denied the defendant's motion to strike an affidavit filed in support of the plaintiff's opposition to the defendant's motion for summary judgment, where the challenged statements concerning conversations about an alleged tolling agreement were admissible at least as party-opponent admissions, with the exception of one statement which constituted inadmissible hearsay, but which added little to the record and thus would not have affected the judge's decision on summary judgment. [864-866]

CIVIL ACTION commenced in the Superior Court Department on October 17, 2002.

The case was heard by *John P. Connor, Jr.*, J., on a motion for summary judgment, and a motion to strike an affidavit was also heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Salvatore M. Giorlandino*, Assistant Attorney General, for the defendants.

*Joseph F. Hardcastle* for the plaintiff.

COWIN, J. The plaintiff, The Locator Services Group, Ltd. (Locator Services), disputes the amount of interest or earnings on 103 eminent domain awards paid to it by the Treasurer and Receiver General on behalf of fifty-five claimants whose property had been taken by eminent domain. Because the eminent domain awards were not initially claimed, the money was paid to the Treasurer and placed under his control pursuant

to G. L. c. 79, § 7D. When Locator Services ultimately attempted to collect the awards and any accrued interest, the Treasurer paid Locator Services the principal amounts of the eminent domain awards plus simple interest. Locator Services brought this action in the nature of mandamus ordering the Treasurer to pay additional interest on the invested awards pursuant to G. L. c. 79, § 10A. A Superior Court judge denied the Treasurer's summary judgment motion and motion to strike an affidavit submitted by Locator Services. We affirm in part and vacate in part the judge's denial of the summary judgment motion and affirm in part and reverse in part his decision on the motion to strike Locator Services's affidavit.

We hold that G. L. c. 79, § 7D, which governs the Treasurer's obligation to invest unclaimed eminent domain awards for the benefit of unknown claimants, requires the Treasurer to invest the awards in one or more of the investment vehicles specified in the statute and to remit to those entitled all interest actually earned on those investments. The statute imposes no fiduciary or quasi fiduciary duty on the Treasurer. To the extent the Treasurer may not have paid Locator Services all interest earned on his investment of the claimants' 103 eminent domain awards after 1993, the Treasurer has breached his statutory duty. Locator Services is entitled to summary judgment on the issue of the Treasurer's liability for all interest actually earned. The case is remanded to determine what interest, if any, is owed Locator Services. The question whether, prior to 1993, the Treasurer breached his statutory duty to invest the awards under § 7D is one of fact to be tried on remand. We determine that a three-year statute of limitations is applicable to Locator Services' claims for additional interest, and that the limitations period runs from the date that the claimants received their allegedly insufficient interest payments. On remand, Locator Services will have the opportunity to establish, and the Treasurer the chance to disprove, the existence of a limitations tolling agreement.

*Statutory scheme.*

We begin with a summary of G. L. c. 79, §§ 7D, 7E, and 10A. Chapter 79 governs eminent domain takings by the Commonwealth and its municipalities. Section 7E requires that when any eminent domain award goes unclaimed for a period

of sixty days after proper notice, "such check shall be withdrawn and a new check . . . shall be made payable to the treasurer and shall be deposited, held and disposed of in accordance with section seven D." Section 7D then provides:

> "[The awards] shall be made payable to the [Commonwealth's] treasurer . . . and deposited with him for the benefit of the person or persons entitled thereto. . . . The treasurer shall deposit any such check [for the unclaimed eminent domain awards] in a savings bank or other like institution, or in savings accounts in a trust company, or invest the same in share accounts in a federal savings and loan association or a savings and loan association located in the commonwealth, or in investments described in [G. L. c. 29, § 38,] to accumulate for the benefit of the person or persons entitled thereto.[2] Such deposit or investment shall be made in the name of the treasurer. When the person entitled to [the] amount [deposited] or any portion thereof satisfies said board of officers [on whom authority to take the property had been conferred by law] of his right to receive it, said board of officers shall, after such notice as it may order, order such amount or portion thereof, or the proceeds of its investment, to be transferred to him by the treasurer. Amounts deposited or invested . . . shall be subject to the provisions of [G. L. c. 200A], relating to abandoned property, and the treasurer shall, insofar as practicable, make such

---

[2] General Laws c. 29, § 38, provides that, with certain exceptions, "all funds over which the commonwealth has exclusive control shall be invested by the state treasurer with the approval of the governor and council as follows: (*a*) In the public funds of the United States . . . or of this commonwealth . . . or of any other state of the United States . . . . (*b*) In the bonds or notes of a county, city or town of this commonwealth. (*c*) In the bonds or notes of an incorporated district in this commonwealth . . . . (*d*) In the bonds or notes of any city of Maine, New Hampshire, Vermont, Rhode Island or Connecticut . . . . (*e*) In the legally authorized bonds for municipal purposes of any city of any state of the United States . . . . (*i*) In the promissory notes of an industrial, commercial, finance, banking, railroad or public utility corporation conducting business in this state . . . . (*j*) In bankers acceptances and bills of exchange eligible for purchase by federal reserve banks . . . . (*k*) In repurchase agreements secured by United States Treasury obligations or United States Treasury obligations bearing a maturity date not later than one year."

reports and give such notice concerning the same as are required respectively by [G. L. c. 200A, §§ 7 and 8]."

General Laws c. 200A governs property that, after the requisite passage of time and procedural requirements, is deemed "abandoned" and ultimately vests in the Commonwealth.[3] Violations of § 7D are enforceable pursuant to § 10A of c. 79. Section 10A provides:

"Compliance with the provisions of section[] . . . seven D . . . may be enforced against any person having a duty of compliance therewith by writ of mandamus issued upon the petition of any person adversely affected by noncompliance therewith. The body politic or corporate on behalf of which the taking was made shall be joined in any such petition, and the petitioner may recover therefrom in the same proceeding damages sustained by reason of such noncompliance, with costs."

*Background.*

1. *Facts.* We summarize the undisputed material facts. Locator Services is a Massachusetts corporation with a principal place of business in Boston. It is in the business of finding and recovering unclaimed assets, including eminent domain awards, for individuals, companies, and other entities that may not be aware of the existence of such funds. In exchange for Locator Services's work on their behalf, these individuals and entities agree to pay Locator Services a percentage of all funds recovered.

In the present action, Locator Services represents fifty-five individuals and entities (claimants) on whose behalf it collected 103 unclaimed eminent domain awards. Each of the claimants has had real property, or its interests therein, taken by the right of way bureau of the Massachusetts Highway Department (bureau) or the Department of Environmental Management (department) between the years 1956 and 1995, pursuant to the

---

[3]Under G. L. c. 200A, § 10 (*e*), "the treasurer shall pay" a party who has proved his ownership in any abandoned deposited funds in the State's possession "interest at the rate of one-twelfth of one per cent per month from the time when [the funds were deposited] to the time when it was paid by him to the claimant."

provisions of c. 79. With respect to each of the takings at issue, the bureau or the department calculated an award of damages and issued a check for the award pursuant to G. L. c. 79, § 7B.[4] Because none of the claimants collected these eminent domain award checks within the sixty days specified in G. L. c. 79, § 7E, the bureau and the department placed the awards under the custody and control of the Treasurer to be invested pursuant to § 7D. The Treasurer then placed the awards in an "Eminent Domain Trust Fund"[5] (trust fund) during at least some of the time the awards were under his control. Because the eminent domain awards at issue here were held by the Treasurer in the trust fund for a considerable period of time, the amount of interest earned on the older awards may exceed the principal amount of those awards. Having discovered the unclaimed eminent domain awards, Locator Services filed claims with the bureau and the department for the unpaid awards plus interest. After verifying Locator Services's authority to collect the takings awards on behalf of the claimants, the bureau and the department requested that the Treasurer calculate the amount of interest to be paid on each of the awards as a result of their investment in the trust fund. For each of the 103 takings at issue, the Treasurer calculated an interest amount, utilizing simple interest, and issued checks to the claimants for the amounts of their respective eminent domain awards plus simple interest.[6] The controversy here arises because Locator Services claims that § 7D requires the Treasurer to pay a greater amount of interest on the invested awards than the simple interest paid.

2. *Procedural history.* On October 17, 2002, Locator Services

---

[4]The amount of these underlying awards is not contested.

[5]The Treasurer cumulatively refers to the accounts or investment vehicles in which the unclaimed eminent domain funds are invested as the "Eminent Domain Trust Fund."

[6]In particular, Locator Services alleges that the Treasurer determined the interest to be paid on the eminent domain awards by calculating an "average annual yield" of the trust fund as a whole for a specified twelve-month period and assigned that yield percentage to a particular award for that year. The Treasurer added the "average annual yield" interest amounts to the unclaimed principal award amount for each respective year the award was held in the trust fund. The base principal for computation of the respective interest earned amounts remained at all times the original amount of the unclaimed award. The Treasurer does not appear to dispute that he utilized this calculation.

filed this action against the Treasurer on behalf of the claimants described above, contending that the Commonwealth failed to pay the claimants proper interest due on their various eminent domain awards pursuant to G. L. c. 79, § 7D.[7] The Commonwealth was joined as a party to this action pursuant to G. L. c. 79, § 10A. See note 1, *supra*. Locator Services alleges three counts in its complaint: count I seeks a writ of mandamus pursuant to G. L. c. 79, § 10A, ordering the Treasurer to pay to Locator Services the difference between the amounts paid to the claimants on their claims (principal plus simple interest) and the amount that they allege should have been paid to the claimants (principal plus the interest actually earned on the awards, which was, according to the complaint, at least in part, compound interest); count II alleges that the Treasurer failed to satisfy his fiduciary duty to invest the proceeds of the unclaimed eminent domain awards with reasonable prudence, and seeks a writ of mandamus pursuant to G. L. c. 79, § 10A, ordering the Treasurer to pay Locator Services damages representing the difference between the amounts paid to the claimants and the amounts that should have been paid had the Treasurer fulfilled his fiduciary or quasi fiduciary duty to invest the proceeds with reasonable prudence; count III asserts that the claimants, as beneficiaries of the trust fund, are entitled to an accounting of the Treasurer's management and maintenance of the trust fund or other funds or accounts in which the unclaimed funds or proceeds thereof were held.

In May, 2003, the Treasurer moved for summary judgment on Locator Services's first amended complaint. The Treasurer claimed that Locator Services failed to prove it has standing to bring the suit; the claims are barred by the applicable statute of limitations, as well as laches or unreasonable delay; mandamus

---

[7]In its original complaint, Locator Services sought to recover interest payments on behalf of ninety-five claimants for 134 claims. The Treasurer filed a request for dismissal of Locator Services's complaint due to its failure to pay court filing fees for all ninety-five claimants. This motion was allowed "as to any claimant who does not file or causes to be filed on his [or] her or its behalf a filing fee . . . within 30 days of the filing of this decision." As a result, Locator Services paid filing fees for, and now represents, only fifty-five claimants seeking recovery of interest on 103 takings. The correctness of this ruling is not before this court and we do not consider it.

relief is unavailable here; and § 7D does not impose a prudent investor standard on the Treasurer. Included within these arguments was the Treasurer's claim of sovereign immunity from suit. The Treasurer supported his motion for summary judgment with a statement of undisputed material facts and the affidavit of Gerald A. McDonough, the deputy treasurer and general counsel from March, 1999, to January, 2003. Locator Services filed an opposition to the Treasurer's summary judgment motion supported by an affidavit of its president, Kim Sherrie Sawyer. The Treasurer moved to strike Sawyer's affidavit. In August, 2003, after a hearing, the judge denied the Treasurer's motions for summary judgment and to strike the affidavit. In denying the motion for summary judgment, the judge found genuine issues of material fact as to standing and the method for calculating interest. The judge relied in part on Infolink Partners Ltd. Partnership *vs*. Treasurer & Receiver Gen., Suffolk Superior Court No. 96-777A (May 9, 2002) (Infolink).[8] Furthermore, the judge noted that the Treasurer's "undisputed facts" were derived from an unverified answer to the complaint and were of "negligible value." The judge also ruled that, "[i]n as much as this is not a tort action, but rather a statutorily created action under G. L. c. 79 prov[id]ing a mandamus action to seek money damages, there is no violation of the statute of limitations."[9] The Superior Court judge denied without comment the Treasurer's motion to strike Sawyer's affidavit.

Invoking the doctrine of present execution, the Treasurer appealed from the ruling denying the summary judgment motion and the "closely related" motion to strike the Sawyer affidavit. That doctrine grants the Commonwealth the right to appeal im-

[8]Infolink Partners Ltd. Partnership *vs*. Treasurer & Receiver Gen., Suffolk Superior Court No. 96-777A (May 9, 2002) (Infolink), involved one of Locator Services's business competitors that had previously filed suit against the Treasurer and had asserted compound interest claims against the Treasurer pursuant to § 7D. In May, 2002, a Superior Court judge (who was not the judge in this case) ruled in that case that § 7D "impose[s] on the Treasurer a fiduciary or quasi-fiduciary duty to invest the proceeds of unclaimed eminent domain awards with reasonable prudence for the benefit of unknown owners." The case was settled and dismissed with prejudice in April, 2003.

[9]The judge issued a second order on October 3, 2003, apparently treating Locator Services's opposition papers as a cross motion for summary judgment and denying that "motion" on the same grounds.

mediately from the denial of a motion for summary judgment that is based (at least in part) on a claim of sovereign immunity. See *Kent* v. *Commonwealth*, 437 Mass. 312, 315-316 (2002), citing *Brum* v. *Dartmouth*, 428 Mass. 684, 688 (1999) (order denying motion to dismiss based on immunity from suit enjoys benefit of present execution rule). To ensure appellate review of all the Treasurer's defenses, including those unrelated to his claim of sovereign immunity, the Treasurer also filed a motion pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), requesting that the judge report the correctness of his rulings.[10] The judge allowed the rule 64 motion, reporting to the Appeals Court "the correctness of [his] orders of October 3, 2003: (1) denying the Treasurer's motion for summary judgment; and (2) denying the Treasurer's closely related motion to strike the April 30, 2003 summary judgment opposition affidavit." The judge also granted the Treasurer's motion to stay the proceedings pending this appeal. The Appeals Court consolidated the Treasurer's interlocutory appeal with the Superior Court's rule 64 report. We transferred the consolidated appeals to this court on our own motion.[11] We first consider whether the judge's denial of summary judgment was appropriate for each of the three counts of Locator Services's complaint. We then review the denial of the motion to strike the Sawyer affidavit.

*Discussion.*

" 'The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.' . . . 'An order granting or denying summary judgment will be

---

[10]In pertinent part, Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), provides: "If the trial court is of opinion that an interlocutory finding or order made by it so affects the merits of the controversy that the matter ought to be determined by the appeals court before any further proceedings in the trial court, it may report such matter, and may stay all further proceedings except such as are necessary to preserve the rights of the parties." See *Lyons* v. *Globe Newspaper Co.*, 415 Mass. 258, 261 n.4 (1993), and cases cited.

[11]As this appeal comes before this court both under the doctrine of present execution and pursuant to a rule 64 report, we treat the case as presenting the issue whether the denial of summary judgment and the motion to strike were proper, and consider all relevant arguments properly raised by the parties.

upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law.' " *Greater Lawrence Sanitary Dist.* v. *North Andover*, 439 Mass. 16, 20-21 (2003), quoting *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), and *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992). "A court must deny a motion for summary judgment if, viewing the evidence in the light most favorable to the nonmoving party, there exist genuine issues of material fact . . . ." *Golub* v. *Milpo, Inc.*, 402 Mass. 397, 400 (1988). See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).[12]

1. *Count I: Violation of G. L. c. 79, § 7D.* In count I, Locator Services argues that the Treasurer violated his statutory duty under § 7D by failing to pay the full amount of interest actually earned on each of the claimant's eminent domain awards. In determining if a triable issue exists concerning the Treasurer's alleged violation of § 7D, we must first examine the nature and extent of the Treasurer's duties under that provision. We construe G. L. c. 79, § 7D, for the first time and apply the well-settled rule that "[w]here the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973). See *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984), citing *Hashimi* v. *Kalil*, 388 Mass. 607, 610 (1983).

We therefore look first to the text of the statute. By its plain terms, the statute establishes the Treasurer's duty to invest any unclaimed eminent domain awards in his custody in one or

[12]As a threshold matter, we briefly address the issue of standing. In his motion for summary judgment, the Treasurer argued that Locator Services lacked standing to bring the action under G. L. c. 79, § 7D. The Treasurer no longer disputes Locator Services's standing. We address it here because the judge based his denial of summary judgment in part on the standing issue, and because standing is a jurisdictional issue that cannot be waived. *Litton Business Sys., Inc.* v. *Commissioner of Revenue*, 383 Mass. 619, 622 (1981). By virtue of its contingent fee agreements with the claimants, Locator Services has demonstrated an economic interest in this litigation. Locator Services has further established authority to bring suit on behalf of the claimants as evidenced by the original powers of attorney executed by the claimants submitted to and accepted by the bureau and the department as a precondition to the payment of the underlying awards to Locator Services. The Superior Court judge was thus correct in concluding that Locator Services has standing to pursue these claims.

more of several investment vehicles. See G. L. c. 79, § 7D ("The treasurer *shall* deposit any such check in a savings bank *or* other like institution, *or* in savings accounts in a trust company . . ." [emphasis supplied]). The statutory list, while extraordinarily broad, is exclusive. Moreover, while the Legislature indicated no preference or directive to guide the Treasurer in his choice among the several named investment vehicles, the use of the term "shall" in the statute indicates that the duty to invest the funds in one or more of the vehicles is mandatory. Although the Treasurer has discretion to choose among the several named investment vehicles, he is obliged to invest the awards in one or more of these named vehicles. See G. L. c. 79, § 7E (where an award check remains unclaimed for sixty days, "[a] new check shall be made payable to the treasurer and *shall* be deposited, held and disposed of in accordance with section seven D"). On this point, both parties are in agreement. By requiring the Treasurer to invest the awards in one or more of the permissible vehicles, the statute grants no authority to the Treasurer to utilize the awards in any other manner or for the Commonwealth's benefit.

The unambiguous language of G. L. c. 79, § 7D, further directs the Treasurer to pay all interest actually earned on his investment of the claimants' eminent domain awards. The statute expressly requires that once the claimant establishes his or her right to the award, the taking agency "*shall . . . order* such amount or portion thereof, or the *proceeds of its investment*, to be transferred to [the claimant] by the treasurer." G. L. c. 79, § 7D (emphasis added). Section 7D commands the Treasurer to invest unclaimed awards in specified investment vehicles "to accumulate for the benefit of the person or persons entitled thereto." *Id.* We would contravene this stated purpose were we to interpret the statute to permit the Treasurer to retain any portion of the interest actually accumulated from the investment of the claimants' awards. The Legislature did not intend the Commonwealth to profit, at least in the first instance, from the Treasurer's investment of the eminent domain awards. Instead, before the Commonwealth can retain any portion of the awards or the interest they generate, the Commonwealth must comply with the procedural safeguards of the abandoned property

statute. See G. L. c. 79, § 7D ("Amounts deposited or invested
. . . shall be subject to the provisions of [G. L. c. 200A], relat-
ing to abandoned property, and the treasurer shall, insofar as
practicable, make such reports and give such notice concerning
the same as are required respectively by [G. L. c. 200A, §§ 7
and 8])." See discussion of G. L. c. 200A, *infra.*

Although the Treasurer agreed at oral argument that § 7D
imposes a duty to invest the claimants' awards in the specified
vehicles and pay the claimants all interest actually accrued, in
his brief, he argued that his own calculation of simple interest
payments was sufficient.[13] The basis of the Treasurer's argu-
ment is that compound interest "will not be authorized absent
express statutory authority." See, e.g., *Coupounas* v. *Madden*,
401 Mass. 125, 131-132 (1987); *Shapiro* v. *Bailen*, 293 Mass.
121, 123-124 (1936). Because the Legislature declined expressly
to instruct the Treasurer to pay compound interest under § 7D,
the argument goes, we should not impose such a requirement.
But we do not impose compound interest payments here.
Instead, we hold that the Treasurer has a duty to invest the
awards in the vehicles expressly enumerated in the statute and
to remit the interest actually accrued, whatever that amount is
and whether it accrued as simple or compound. That many of
the permissible investment vehicles expressly listed in § 7D
earn compound interest suggests that payments will at least
sometimes include compound interest. See G. L. c. 79, § 7D
(permitting investment in several vehicles that can yield
compound interest, such as a "savings bank" or a "savings and
loan association").

The Treasurer also argues that G. L. c. 79, § 37, relating to
the interest to be calculated on an eminent domain taking for
the period between the date of taking and the date of an award,
provides only for simple interest, suggesting that simple interest
is likewise appropriate under § 7D. See G. L. c. 79, § 37, as
amended through St. 2004, c. 352, § 36 (prejudgment and post-
judgment interest on damage awards "calculated at an annual

---

[13]In his brief, the Treasurer frames this argument as one of the bases for his
sovereign immunity claim. We consider this argument here as it relates to the
duty owed by the Treasurer pursuant to § 7D. We deal with the issue of
sovereign immunity *infra.*

rate equal to the weekly average one-year constant maturity treasury yield, as published by the Board of Governors of the Federal Reserve System"). However, the simple interest rate established in § 37 is not controlling in this action for a violation of § 7D. Chapter 79 clearly distinguishes between the interest owed on unpaid awards under § 37 and the interest on investments to be paid claimants under § 7D. Compare G. L. c. 79, § 37, as amended through St. 2004, c. 352, § 35 (applicable to interest paid on "[d]amages under this chapter . . . from the date on which the right to damages . . . vested until paid . . ."), with G. L. c. 79, § 7D (governing Treasurer's "deposit or investment" of unclaimed damages "for the benefit of the person or persons entitled thereto"). Unlike the post-award interest on the Treasurer's investments pursuant to § 7D at issue in the present case, § 37 involves "just compensation" that must be paid to a property owner on an unpaid eminent domain award for the period between the taking and the ascertainment and payment of an award. See *M.B. Claff, Inc.* v. *Massachusetts Bay Transp. Auth.*, 441 Mass. 596, 599-600 (2004) ("the issue of interest [under § 37] is simply part of the claim for 'just compensation' "). Here, we deal with an entirely different payment issue: what interest is owed a claimant on an eminent domain award *after* that award has been paid to the Treasurer by the taking authority, and as a direct result of the Treasurer's investment of that award.

Similarly, the Treasurer argues that § 7D should be construed as requiring simple interest because G. L. c. 200A, which concerns "abandoned" property, and to which § 7D expressly refers, requires only simple interest. See G. L. c. 200A, § 10 (*e*) ("the treasurer shall pay over to the claimant only that amount which the treasurer actually received together with interest at the rate of one-twelfth of one per cent per month"). While § 7D expressly refers to the abandoned property statute, unclaimed awards subject to § 7D do not automatically become "abandoned property" within the meaning of G. L. c. 200A unless and until the procedural requirements of G. L. c. 200A are met. See, e.g., G. L. c. 200A, § 7 (*b*) (persons holding property presumed abandoned must file report with treasurer containing all known owners and holders of property and property descrip-

tion); G. L. c. 200A, § 7A (holder of property presumed abandoned must send notice to apparent owner's last known address); G. L. c. 200A, § 8 (*a*) ("treasurer shall cause a notice to be published . . . at least once a week for two consecutive weeks in a newspaper"); G. L. c. 200A, § 8 (*e*) (treasurer shall mail notice to apparent owner). See also *Treasurer & Receiver Gen.* v. *John Hancock Mut. Life Ins. Co.*, 388 Mass. 410, 412-413 (1983) (property deemed abandoned after statutory "dormancy" period, and report and remittance to Treasurer, and compliance with "procedures to reunite missing owners with the surrendered property"). In fact, § 7D expressly directs the Treasurer to comply with the procedural requirements of §§ 7 and 8 of G. L. c. 200A "insofar as practicable."[14] The Treasurer does not claim, the record does not suggest, and the judge did not find that the money at issue here was ever deposited in the abandoned property fund in conformity with the procedures of G. L. c. 200A. Accordingly, the simple interest to be paid under G. L. c. 200A, § 10 (*e*), has no application to the instant case.

Locator Services, on the other hand, argues that the Treasurer must pay claimants compound interest on the invested awards, even if compound interest was not actually earned by the Treasurer on those investments. We decline to adopt the position of either party, that the Treasurer may pay claimants strictly simple interest or must pay exclusively compound interest, regardless of the type and amount of interest actually earned on the investments. Locator Services's compound interest argument is based in part on its claim that "[a]ll of the investment options permitted by law earn compound interest." We need not address whether all of the statutorily permissible investment vehicles would yield compound interest.[15] The statute is clear in its directive: the Treasurer must choose among the range of investment options set forth in § 7D, and then turn over to the claimants all interest actually earned as a result of those invest-

---

[14]Locator Services has not alleged, as part of its breach of § 7D claim, that the Treasurer failed to comply with the notice and reporting requirements of G. L. c. 200A.

[15]Locator Services's compound interest argument is also grounded in its claim that § 7D imposes a "prudent investor" fiduciary or quasi fiduciary duty on the Treasurer. We address and reject the existence of such a duty *infra.*

ment choices, regardless whether that interest was simple or compound.

Having so construed the statute, we now consider whether there exists a genuine issue of material fact regarding the Treasurer's alleged breach of these statutory obligations. On the record before the judge, it remains unclear how much interest was actually earned by the Treasurer on his investment of the eminent domain awards after 1993. The Treasurer paid the claimants only simple interest based on his calculation of an "average annual yield" of the trust fund. See note 6, *supra*. To the extent the Treasurer may have invested the awards in vehicles earning compound interest post-1993, the simple interest paid to each of the claimants was inadequate as a matter of law under § 7D and the claimants are entitled to damages in the amount of the full interest actually earned by the Treasurer on those invested awards. Consequently, there exists no genuine issue of material fact to be resolved at trial concerning the Treasurer's liability for all interest actually earned on his investments pursuant to § 7D, and Locator Services is entitled to partial summary judgment on that issue. Pursuant to rule 56 (c), "[s]ummary judgment, when appropriate, may be rendered against the moving party." See, e.g., *Perseus of N.E., MA, Inc.* v. *Commonwealth*, 429 Mass. 163, 168 (1999). Additionally, rule 56 (c) provides that summary judgment "may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." The amount of interest actually earned by the Treasurer on his investment of the unclaimed awards after 1993, and whether that interest was greater than the amount paid to the claimants, are questions of fact to be resolved at trial on remand.

How or if the Treasurer invested the claimants' awards prior to 1993 also remains an open question to be tried on remand. In its brief, Locator Services alleges that, prior to 1993, the Treasurer failed to comply with the requirement of § 7D to invest the claimants' awards in one of the specified vehicles. At oral argument, the Treasurer conceded that he is unaware how (or even whether) the claimants' eminent domain awards were invested prior to 1993, and that, consequently, he may have violated his statutory duty to invest the awards. In its amended

complaint, Locator Services did not allege specifically the Treasurer's pre-1993 failure to invest the awards. Nevertheless, § 7D of the statute, as construed above, requires the Treasurer to invest the unclaimed awards. Therefore, reading the complaint as a whole, and recognizing that much discovery still remains to be conducted, we conclude that the allegation of the Treasurer's pre-1993 failure to invest the funds was subsumed within Locator Services's broader claim that the Treasurer breached his statutory duty under § 7D. On remand, Locator Services should have the opportunity to prove this allegation as part of count I.

Because the issue of damages for such a breach is likely to arise at trial, we very briefly address it here, although we leave it to the trial court to resolve the specifics. Should Locator Services prove the Treasurer failed to invest the funds in one or more of the statutorily mandated investment vehicles for any portion of the relevant time period, or that the Treasurer's actual investment decisions cannot be determined, Locator Services will be entitled to the interest that would have been earned during that period had the Treasurer invested in the lowest-yielding investment vehicle permissible under § 7D. These amounts represent the minimum amount of return the claimants would have received had the Treasurer placed the money in the lowest-yielding investment, thereby complying with the statute.

2. *Count II: Breach of fiduciary duty.* In count II of its amended complaint, Locator Services alleges a breach of fiduciary duty by the Treasurer for failing properly to invest the claimants' eminent domain awards and seeks the interest that "would have accumulated for the benefit of the [c]laimants . . . if the awards were invested prudently by the Treasurer." At the foundation of this allegation is Locator Services's argument that § 7D imposes a "prudent investor" fiduciary duty on the Treasurer. This fiduciary duty, Locator Services asserts, requires the Treasurer to invest the awards only in vehicles that earn compound interest over time. Contrary to Locator Services's assertions, we hold that § 7D imposes no such "prudent investor" fiduciary duty. Accordingly, the Treasurer is entitled to a grant of summary judgment on count II of the amended complaint.

Significantly, § 7D does not expressly confer on the Treasurer any "fiduciary," "quasi fiduciary," or "prudent investor" standard. The legislative omission is particularly striking because the Legislature has elsewhere explicitly expressed its intent to confer fiduciary duties on parties. See, e.g., G. L. c. 35, § 10 ("It shall be the fiduciary duty of all officers of a county government who control the investment of [monies held in the name of a county] to invest them prudently . . ."); G. L. c. 114, § 5C, inserted by St. 2004, c. 177, § 3 ("[cemetery and crematory] corporation[s] and [their] officers shall owe a fiduciary duty to a contributor to the trust fund [established for the care and preservation of a burial lot], his heirs and legal representatives"); G. L. c. 202, § 38 ("executor, administrator, guardian, conservator, or trustee" authorized to sell real estate has a "fiduciary duty to obtain the highest possible price for such real estate"). In fact, contrary to requiring that the Treasurer choose "prudently" the highest yielding among the investment vehicles listed in the statute, § 7D only mandates investment in one or more of the permissible vehicles and suggests no limit to the Treasurer's discretion in choosing among them. Contrast G. L. c. 35, § 10 (county officers with fiduciary duty must invest money "in such a manner as to require the payment of interest on the money at the highest possible rate reasonably available"); 29 U.S.C. § 1002(21)(A) (2000) (defining fiduciary duty of manager of employee retirement plan under employee retirement income security plan). Elsewhere in G. L. c. 79, the Legislature enumerated more fully the nature of the duty imposed, but it chose not to do so here. See G. L. c. 79, § 26 (trustees for persons with "legal disability" must "faithful[ly] perform[]" trustee duties).

This court has recognized fiduciary relationships in limited circumstances. See, e.g., *Berish* v. *Bornstein*, 437 Mass. 252, 269 n.29 (2002) (trustee of condominium association owed fiduciary duty to association but not individual unit owners); *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 333-334 (2001) (stockbroker is fiduciary of customer in certain circumstances, as where entrusted with discretion); *Demoulas* v. *Demoulas*, 424 Mass. 501, 504-505 (1997) (sole voting trustee to family business breached fiduciary duty to shareholders by exploiting

control over assets); *Merola* v. *Exergen Corp.*, 423 Mass. 461, 464 (1996) (stockholders in close corporation owe one another fiduciary duty); *Matter of Pressman*, 421 Mass. 514, 518 (1995) (attorneys owe fiduciary duty to clients); *Zimmerman* v. *Bogoff*, 402 Mass. 650, 660 (1988) (joint venturers owe one another fiduciary duties); *Chelsea Indus., Inc.* v. *Gaffney*, 389 Mass. 1, 11 (1983) (trusted executives owed fiduciary duty to employer). The "prudent investor" fiduciary duty is commonly applicable to trustees, who owe a special responsibility to beneficiaries of a trust when investing trust assets. See, e.g., *Berish* v. *Bornstein, supra*; *Chase* v. *Pevear*, 383 Mass. 350, 362-364 (1981) (trustee of testamentary trust owed "prudent man" fiduciary duty to beneficiaries). Here, in contrast to these above-cited examples, the Treasurer's duties are expressly delineated by statute, and there exists no other special relationship between the claimants and the Treasurer that might warrant the imposition of a fiduciary duty. The eminent domain statute creates a comprehensive scheme that defines the rights and obligations of parties involved in property takings. Cf. *Ng Bros. Constr.* v. *Cranney*, 436 Mass. 638, 642 (2002), quoting *Mullen Lumber Co.* v. *Lore*, 404 Mass. 750, 752 (1989) (mechanic's lien statute provides "a comprehensive scheme which compels strict compliance in order to obtain relief"). It sets forth a variety of responsibilities to be fulfilled by governmental agencies and officers and creates complex procedures to safeguard landowners' rights. Had the Legislature intended to impose a fiduciary duty on the Treasurer or qualify further the Treasurer's responsibilities, it would have expressly done so.

Locator Services points to the statutory language in § 7D that the Treasurer must invest the funds "for the benefit" of the claimants as evidence of the Legislature's intent to impose a fiduciary duty on the Treasurer to invest in the highest-yielding investment vehicles. This language is insufficient to establish a fiduciary duty, nor does it mandate the manner in which the Treasurer must prioritize the investments in choosing among the statutory alternatives. Locator Services would also have this court find a fiduciary duty from the fact that some or all of the investment vehicles identified in § 7D earn interest or dividends that are either compounded on a regular basis or, through

reinvestment, result in a compounding effect. Merely because some (or even all) of the vehicles enumerated yield compound interest does not imply a fiduciary obligation on the Treasurer's part. Finally, relying on *Goodwin* v. *Simpson*, 292 Mass. 148, 150 (1935), Locator Services argues that fiduciary relationships are well established where one person is entrusted with investing funds for another. However, in *Goodwin* v. *Simpson, supra*, the fiduciary duty attached to the vice-president, director, and treasurer of a corporation engaged in the business of soliciting the handling and investment of the money of others. While the duty to invest funds for another is indeed common among fiduciaries, the existence of such a responsibility is not sufficient, without more, to create a fiduciary duty. See *United Feature Syndicate, Inc.* v. *Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 218 (S.D.N.Y. 2002), quoting *Penato* v. *George*, 52 A.D.2d 939, 942 (N.Y. 1976) ("Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another"). Here, the Treasurer's responsibility to invest and hold funds for unknown claimants does not arise from any common-law fiduciary obligation, nor any special relationship of trust, confidence, or reliance. Rather, it is expressly created, and limited, by statute. See G. L. c. 79, § 7D. It would be inconsistent with this statutorily prescribed duty to read into it any additional fiduciary obligations.

Because we hold today that § 7D does not impose any fiduciary duty on the Treasurer, and Locator Services's count II is dependent on such a fiduciary duty, summary judgment should be entered on behalf of the Treasurer on this count.[16] The Treasurer argues, however, that all three counts of Locator Services's complaint are based on a breach of fiduciary duty and that therefore summary judgment must enter on all three counts. While count I of the amended complaint does incorporate allegations that presume a fiduciary duty, count I is not dependent on such a duty for its validity. Even absent any

---

[16]Having rejected any "fiduciary duty" on the part of the Treasurer, we need not address the Treasurer's arguments that Locator Services's breach of fiduciary duty claims are in fact negligence tort claims, and therefore barred under various provisions of G. L. c. 258 (the Massachusetts Torts Claims Act).

fiduciary duty on the part of the Treasurer, Locator Services may demonstrate at trial that the Treasurer failed to pay the interest actually earned on his investment of the awards, and that he failed to invest properly the awards prior to 1993, either of which would constitute a violation of § 7D. Similarly, while Locator Services also incorporates breach of fiduciary duty allegations in count III of its complaint (for an accounting), Locator Services's entitlement to an accounting is not dependent on the Treasurer's fiduciary duty. We address count III directly below.

3. *Count III.* In count III, Locator Services requests an accounting of all interest earned by the Treasurer on the investment of the awards and an accounting of what was done with the money earned as a result of that investment but not distributed to the claimants. Despite the fact that the Treasurer does not owe the claimants any fiduciary duty, an accounting may be necessary in order to determine what, if any, additional interest is owed Locator Services should it prevail on its violation of § 7D claim. We therefore treat count III as a request for an assessment of any damages owed Locator Services under count I. Additional discovery likely will resolve much of the present uncertainty regarding what was done by the Treasurer with the awards during the period in question and how much additional interest, if any, is owed Locator Services. To the extent additional questions remain, the trial court should order any additional accounting by the Treasurer necessary to resolve the issue of damages.

Having determined that, as a matter of statutory interpretation, Locator Services may pursue its claim alleging the Treasurer violated § 7D, we next consider several arguments raised by the Treasurer, which he asserts warrant summary judgment in his favor.

4. *Availability of mandamus relief.* First, the Treasurer argues that even if he breached his statutory duty here, mandamus relief is inappropriate. The Treasurer asserts that because § 7D grants him discretion to choose among the several investment vehicles permitted under § 7D when carrying out his duty to invest, mandamus relief is inappropriate. The Treasurer emphasizes that mandamus relief is generally not available

where an official has discretion in performing duties, see *Channel Fish Co.* v. *Boston Fish Mkt. Corp.*, 359 Mass. 185, 187 (1971), but instead is appropriate only where there is but one way an obligation may be fulfilled. *Matter of McKnight*, 406 Mass. 787, 792 (1990). The Treasurer is only partially correct. His rationale is inapplicable to the § 7D claim we remand today. In count I, Locator Services does not seek mandamus in order to impose a particular investment choice on the Treasurer; rather, it seeks to enforce the Treasurer's statutory obligation to invest the awards in one of the vehicles specified in § 7D and then remit all profits actually earned (or those that should have been earned) from that statutorily required investment. As discussed *supra*, the Treasurer has no discretion whether to invest the funds or whether to remit all interest earned. Therefore, mandamus relief is appropriate here — this is precisely the cause of action the Legislature had in mind when it created the right to seek mandamus relief and damages under G. L. c. 79, § 10A, for violations of § 7D.

Alternatively, the Treasurer argues that Locator Services's claim is actually a contract claim governed by G. L. c. 79, § 41, and that, accordingly, mandamus is not available where another remedy exists. The Treasurer relies on *Eldredge* v. *Selectmen of Brewster*, 18 Mass. App. Ct. 502 (1984), for this proposition. This argument fails because § 41 is not controlling in this case, as it applies to actions seeking to recover underlying eminent domain awards that have not yet been paid by the taking authority or have not been claimed by claimants. Section 41 applies, by its terms, where "no petition *under section fourteen* [has been] filed within the time limited," and allows recovery for an underlying "award of damages." Section 14, in turn, provides a cause of action to "[a] person entitled to an award of his *damages* under this chapter . . . [pursuant to] section *six, seven, nine or ten* . . . ." Nothing in *Eldredge* v. *Selectmen of Brewster*, *supra*, suggests the contrary. There, the plaintiffs' action under § 41 sought to recover unclaimed eminent domain awards. Here, Locator Services is not suing for the payment of underlying eminent domain awards, or claiming any violation of §§ 6, 7, 9, or 10. Rather, this action alleging a violation of § 7D concerns postaward investment of the

funds. This cause of action is expressly governed by § 10A, not § 41. See G. L. c. 79, § 10A (governing compliance with the provisions of § 7D, among others).

5. *Sovereign immunity.* The Treasurer argues further that the doctrine of sovereign immunity bars Locator Services's claims. We disagree. According to the doctrine of sovereign immunity, the Commonwealth cannot be sued in its own courts "absent consent by the Legislature or abrogation of sovereignty by Congress acting under its Fourteenth Amendment powers . . . . 'Consent to suit must be expressed by the terms of a statute, or appear by necessary implication from them.' " *Lopes* v. *Commonwealth*, 442 Mass. 170, 175-176 (2004), quoting *Woodbridge* v. *Worcester State Hosp.*, 384 Mass. 38, 42 (1981). See *Bain* v. *Springfield*, 424 Mass. 758, 762-764 (1997). Applying this standard, the Commonwealth has clearly abrogated its immunity in § 10A by expressly authorizing an action for mandamus relief and damages. The Treasurer asserts that § 10A does not expressly authorize suit against the Commonwealth because § 7D does not require the Treasurer to pay compound interest. This argument confuses the issue whether the Treasurer violated the statute by paying the claimants only simple interest with the issue whether the Treasurer is immune from suit under the doctrine of sovereign immunity. The allegations to be tried on remand — that the Treasurer failed to invest the funds as required under § 7D and did not remit the full interest yielded on the investments made — if proved, would constitute violations of § 7D regardless of whether the statute requires compound interest in all instances.

6. *Statute of limitations and tolling.* We next address the Treasurer's argument that summary judgment is proper because Locator Services failed to file the action within the applicable limitations period. On remand, Locator Services will seek mandamus relief pursuant to § 10A to compel the Treasurer to fulfil his duties under § 7D. Because neither § 7D nor § 10A includes any reference to a limitations period for filing an action alleging a Treasurer's breach of § 7D, we must first determine whether to read a limitations period into those sections.

We do not believe the Legislature intended to permit actions

seeking additional interest payments under § 7D, and brought under § 10A, to be filed indefinitely after an alleged breach. "We find nothing in the legislative history of [the statute], which would suggest that the Legislature, by not specifically prescribing a period of time within which an action . . . must be brought, intended that actions not be time-limited. If such a result had been intended, it would have been natural for the Legislature to express such an intention." *Nantucket* v. *Beinecke*, 379 Mass. 345, 348 (1979). The inclusion of a three-year limitations period elsewhere in the statute, see G. L. c. 79, §§ 16, 41, does not necessarily indicate that the Legislature intended that there be no limitations period for claims alleging additional interest owed under § 7D. To the contrary, to construe § 7D as imposing no limitations period at all on these claims, where the remainder of the statute contains limitations periods, would violate the well-settled canon of statutory interpretation that, where possible, we construe the various provisions of a statute in harmony with one another. See *Kargman* v. *Commissioner of Revenue*, 389 Mass. 784, 788 (1983) ("statutes should be interpreted as a whole to constitute a consistent and harmonious provision"). Moreover, it would be illogical to apply a strict three-year statute of limitations period to bar a claimant from seeking her underlying award for a taking under § 16 (where such a claimant may have received no compensation for the taking), while allowing that same claimant an indefinite period of time in which to file an action for additional interest on the Treasurer's investment of that award under § 10A.

Having determined that some limitations period was intended to apply to the present action, we must discern the proper duration of such a period. The Treasurer posits that Locator Services's claims are time barred by the limitations period applicable to contractual claims asserted under § 41 of the eminent domain statute. As discussed *supra*, § 41 is not controlling in this case, as it applies to actions seeking to recover underlying eminent domain awards. Alternatively, the Treasurer urges this court to establish a "reasonable" limitations period, seeking guidance from other closely related, though not controlling, sections of G. L. c. 79. Where no limitations period is statutorily provided, it is instructive to consider reasonable periods set

forth in similar statutes. See *Trust Ins. Co.* v. *Commissioner of Ins.*, 48 Mass. App. Ct. 617, 625 (2000). A three-year limitations period is expressly set forth in G. L. c. 79, § 16, for suits seeking damages pursuant to § 14 (for the principal award for the taking). The finality of that three-year limitations period is underscored in § 41, which provides that "[i]f no petition under section fourteen is filed within the time limited [i.e., three years], the award of damages shall be final and the amount thereof shall be paid upon demand, and if not so paid may be recovered in an action of contract." Also enlightening, contract actions against the Commonwealth are subject to a three-year statute of limitations, see *Wong* v. *University of Mass.*, 438 Mass. 29, 35 & n.15 (2002), as are tort claims against the Commonwealth brought under the Massachusetts Tort Claims Act, G. L. c. 258. See G. L. c. 260, § 3A. We thus conclude that three years is a reasonable limitations period for actions brought under § 10A to enforce the Treasurer's obligation under § 7D to pay the proper interest owed on his investment of unclaimed eminent domain awards. By importing this three-year limitations period into § 10A and § 7D, we also read G. L. c. 79 as a harmonious whole. See *Kargman* v. *Commissioner of Revenue, supra.*

Locator Services argues that, rather than imposing a three-year limitations period on all actions brought under § 10A for interest payments pursuant to § 7D, this court should adopt a case-by-case approach, employing a "reasonable" period determined "from the facts and circumstances of each particular case." *Commissioner of Corps. & Taxation* v. *Malden,* 321 Mass. 46, 51 (1947). We decline to embrace such a fluid and ad hoc approach. Such a "case by case" approach would undermine the statute's goal of finality. See *Eldredge* v. *Selectmen of Brewster*, 18 Mass. App. Ct. 502, 504 (1984) (eminent domain statute intended to "afford[] public agencies predictability and finality concerning their obligations when they take private property"). Moreover, it would leave the Treasurer open to suits for additional interest payments under § 7D for an indefinite period of time and almost certainly lead to inconsistent application and frequent appeals.

We now consider from what point the three-year limitations

period will run. The Treasurer argues that the limitations period should begin to run from the date when the claimants or their heirs received actual notice of the property taking, or from the date "when the claimants first learned, or should have learned, of the award." We hold that the three-year limitations period should run from the time the claimants were paid the allegedly insufficient interest on their awards. The cause of action for insufficient interest accrued, not when the claimants' land was taken by the MHD and DEM, but rather when the claimants received their allegedly insufficient interest payments. It is only at the point the claimants received their interest payments that they had any reason to claim a breach of § 7D. This is consistent with our general rule that statutes of limitations run from the date the cause of action accrues. See *Demoulas* v. *Demoulas*, 424 Mass. 501, 517 (1997) (three-year limitations period on tort actions under G. L. c. 260, § 2A, generally runs from date cause of action accrues); *Berkshire Mut. Ins. Co.* v. *Burbank*, 422 Mass. 659, 661 (1996) (limitations periods on contract actions, prescribed by G. L. c. 260, § 2, accrue from time of breach). We see no harm to the Commonwealth in permitting the claimants to file suit three years from the date of the payment, rather than three years from the date of the taking. Any delay in filing suit associated with this later running of the statute of limitations will not harm the Commonwealth. Pursuant to his obligations under § 7D, the Treasurer should have invested the awards on behalf of the claimants with the expectation of either remitting the earnings to the claimant or depositing them, after the proper procedures, in the abandoned property fund pursuant to G. L. c. 200A.

Having determined that a three-year statute of limitations period is applicable to Locator Services's claim that the Treasurer violated § 7D, and that such limitations period runs from the date that the claimants received their allegedly insufficient payments, we must determine whether there exists a genuine issue of material fact whether Locator Services timely filed this action. The Treasurer claims that application of the three-year statute of limitations period will require dismissal of ninety-eight of Locator Services's 103 claims. In fact, the record does reveal that, if the three-year limitations period were

applied to Locator Services's claims, without any tolling, the majority of the claims would be subject to dismissal. It is undisputed that the Treasurer made initial payments to the vast majority of the claimants more than three years prior to the time Locator Services filed suit in October, 2002.

Nonetheless, Locator Services claims that its delay in filing suit was in reliance on an agreement it made with the Treasurer to toll any applicable statute of limitations, and that, when the tolling agreement is applied, its claims were filed within the three-year limitations period. In particular, Locator Services claims that it reached an agreement with the Treasurer to defer initiating its suit to recover unpaid interest until the Infolink case was decided. See note 8, *supra.* In support of its tolling agreement argument, Locator Services filed the Sawyer affidavit. Locator Services also filed, with the Sawyer affidavit, a letter by Sawyer to the judge presiding over the Infolink litigation, expressing Locator Services's interest in the matter. The Sawyer affidavit avers that, in 1998, Sawyer had discussions with Jennifer C. Borden, deputy general counsel for the Treasurer, during which the two agreed that if Locator Services would not file suit on behalf of the claimants until the Infolink action had been resolved, Locator Services would get the benefit of any decision favorable to the plaintiff on the interest issue. If, on the other hand, the Commonwealth prevailed on its standing argument in the Infolink suit and therefore the interest issue was not addressed by the Superior Court, the affidavit asserts that Locator Services would still have the right to file suit on behalf of the claimants. Sawyer claims in her affidavit that Borden informed her that Assistant Attorney General Salvatore M. Giorlandino, who was handling the Infolink action, also agreed to this tolling agreement. Approximately five months after the summary judgment findings and rulings were issued in the Infolink suit in May, 2002, Locator Services filed its complaint.

The Treasurer argues that no valid tolling agreement was reached and that the Sawyer affidavit is insufficient to create a genuine issue of material fact as to its existence. In his brief, the Treasurer asserts that an affidavit executed by Gerald A. McDonough, the deputy treasurer and general counsel, filed three months after the Sawyer affidavit, presented "undisputed"

testimonial and documentary evidence that Locator Services never executed a valid statute of limitations tolling agreement. In his affidavit, McDonough, who was Borden's superior for a brief period, averred that he was "thoroughly briefed" by her on the Infolink suit but that he had "no recollection" of Borden's informing him of a tolling agreement with Locator Services. McDonough further alleged that Locator Services never "mentioned the existence of any . . . tolling agreement . . . during the course of my dealings with them." The issue whether a valid tolling agreement was executed, the primary topic addressed by the Sawyer and McDonough affidavits, cannot be labeled "undisputed."

The Treasurer also points to correspondence by Locator Services to the Treasurer's Office in March and April, 1999, three years prior to the summary judgment decision in the Infolink suit, which he claims refutes any assertion by Locator Services of a tolling agreement. While these letters may undercut Locator Services's claim of a tolling agreement, they do not remove the genuine dispute over its existence. Finally, the Treasurer argues that even if a valid tolling agreement were made between the parties, it was revoked by Locator Services's March and April, 1999, correspondence, which demanded that the Treasurer pay interest due, threatened suit, and made no reference to any tolling agreements.[17] This correspondence is ambiguous at best as to any revocation of a pre-existing tolling agreement.

Given the conflicting testimonial and documentary evidence before the Superior Court as described above, there existed at least a genuine issue of material fact whether a verbal tolling agreement was made, and, if so, whether it was revoked. In fact, at oral argument, the Treasurer conceded that the evidence in the light most favorable to the plaintiff would lead to the view that in 1998 an oral tolling agreement was made. On remand, Locator Services should have the opportunity to prove the existence of this tolling agreement, and the Treasurer the chance to prove its revocation. We leave it to the trial court to

---

[17]The Treasurer also argues that even if an oral tolling agreement was made, such tolling agreements are not enforceable. The Treasurer has provided no case law in support of this contention.

apply the applicable statute of limitations and any enforceable tolling agreement and determine which, if any, of the 103 claims are ultimately barred by the running of the limitations period.[18]

*7. Motion to strike Sawyer affidavit.* We turn now to the judge's denial of the Treasurer's motion to strike the Sawyer affidavit. As discussed above, Locator Services filed the Sawyer affidavit along with its opposition to the Treasurer's motion for summary judgment. The Treasurer filed a motion to strike the affidavit. That motion was denied. The Treasurer argues that the judge erred, and had the affidavit been stricken, summary judgment would have been entered in his favor.

The Treasurer argues that paragraphs 14-29 of Sawyer's affidavit contain evidence that went beyond limited testimony provided in Locator Services's answers to interrogatories, especially interrogatory no. 13, which asked Locator Services to elaborate on its statute of limitations tolling agreement claim. Our case law establishes that a party, purely in the hopes of defeating summary judgment, may not submit at the eleventh hour an affidavit that contradicts the party's earlier statements and discovery responses. Such an affidavit is not enough to create a triable issue. See, e.g., *Ng Bros. Constr. v. Cranney*, 436 Mass. 638, 647-648 (2002); *Lyons v. Nutt*, 436 Mass. 244, 249 (2002). But Locator Services has done no such thing here in filing the Sawyer affidavit. Since its initial complaint, Locator Services has alleged a tolling agreement and has claimed that it has standing. Sawyer's affidavit testimony concerning the specifics of that tolling agreement and Locator Services's standing, while more detailed than the information provided by Locator Services in its pleadings and interrogatory answers, did not contradict earlier claims by Locator Services, nor does it appear intended to invent a defense for the purpose of defeating summary judgment. The Treasurer would have us strike any affidavit testimony that "went well beyond" previously sworn

---

[18] In his motion for summary judgment, the Treasurer argued that Locator Services's claims were barred by the doctrine of laches or unreasonable delay. The Treasurer did not brief or argue this point before this court. On the record before us, and given the genuine issue concerning the existence of a tolling agreement, we cannot determine that the Treasurer is entitled to summary judgment on this basis.

statements. We decline to do so. Our case law contains no blanket prohibition on affidavits that merely elaborate on previously sworn statements.

The Treasurer next argues that paragraphs 14-24 of the Sawyer affidavit contain inadmissible hearsay evidence, in the form of testimony concerning an April, 2003, conversation with Borden, the former deputy general counsel for the Treasurer, regarding the alleged tolling agreement. We recognize that "[h]earsay in an affidavit is unacceptable to defeat summary judgment." *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985). See *Nile* v. *Nile*, 432 Mass. 390, 402 (2000) (judge properly rejected affidavits based on inadmissable hearsay offered to create factual issue). However, Sawyer's affidavit primarily refers to discussions between Sawyer and Borden that occurred during 1998, rather than during April, 2003. The timing of these conversations is critical because, after April, 1999, Borden left her employment at the Treasurer's office. Thus, it appears from the face of the affidavit that the conversations referenced occurred mainly during Borden's tenure as deputy general counsel for the Treasurer, and are admissible at least as party-opponent admissions. See, e.g., *Zucco* v. *Kane*, 439 Mass. 503, 507-508 (2003); *Berman* v. *Linnane*, 424 Mass. 867, 873 (1997), *S.C.* 434 Mass. 301 (2001).[19] The affidavit also refers to conversations between Sawyer and McDonough, which are likewise admissible as party-opponent admissions. To the extent the conversations referenced in the affidavit are offered to prove the existence of an oral tolling agreement, they would not be hearsay at all, but rather admissible as verbal conduct giving rise to legal rights. *Commonwealth* v. *McLaughlin*, 431 Mass. 241, 246 (2000) (testimony concerning oral agreement not hearsay because "not offered for the truth of the matters as-

---

[19]Paragraph 19 of the affidavit does reference an April, 2003, conversation with Borden: "In connection with preparing this affidavit [in April, 2003], I contacted Jennifer Borden, who confirmed that my general recollection of the events in paragraphs 16 and 17 above was correct." That statement, made well after Borden's employment at the Treasurer's office, is not a party-opponent admission and should be struck as hearsay. We note, however, that this paragraph adds little to the record and thus would not affect the judge's decision on summary judgment.

serted, but as proof of an 'operative' statement").[20] The judge's denial of the Treasurer's motion to strike Sawyer's affidavit was therefore proper, with the exception that the Treasurer's motion to strike should be allowed as to paragraph 19. See note 19, *supra*.

8. *Conclusion.* The order of the Superior Court judge denying the Treasurer's motion for summary judgment with respect to count I is affirmed. Partial summary judgment is to be entered on behalf of Locator Services on the issue of the Treasurer's liability for the actual interest earned on his investment of the claimants' awards. The issue of damages on count I is remanded for trial. The order of the Superior Court judge denying the Treasurer's motion for summary judgment is vacated with respect to count II, and summary judgment shall enter in favor of the Treasurer on that count. Count III is remanded only for purposes of an assessment of damages under count I. The judge's order denying the Treasurer's motion to strike the affidavit of Kim Sherrie Sawyer is affirmed in part and reversed in part. The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

---

[20]In his motion to strike, the Treasurer claims the Sawyer affidavit contains opinion and speculative evidence in violation of Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). We do not consider the affidavit testimony to be inadmissible opinion or speculative evidence.