Agnes, Peter W., J.
Phillip G. Haddad (Haddad) brought this action against Nordgren Memorial Chapel, Inc. (Nordgren), Kurt J. Mangsen and Katherine E. Mangsen (the Mangsens) alleging breach of fiduciary obligations. Nordgren and the Mangsens (Defendants) counterclaimed against Haddad for breach of fiduciary duty, interference with contractual relations, and tortious interference with business expectancies. The Defendants now move for a preliminary injunction to restrain Haddad from communicating disparaging information about Nordgren and the Mangsens. After hearing and review of the record and the parties’ memoranda, for the reasons set forth below, the Defendants’ motion is DENIED.
BACKGROUND
Haddad, a 3% minority shareholder of Nordgren stock, is a former Nordgren employee and former member of the Nordgren board of directors. The Mangsens, who own the remaining 97% of Nordgren stock, are officers of the corporation and sit on the Nordgren board of directors.
On July 30, 2003, the Mangsens voted in a new board of directors that did not include Haddad. Nordgren subsequently terminated Haddad’s employment on November 19, 2003. In response, Haddad *231 filed the present action against the Defendants on March 1, 2004.
Since the commencement of this action, there has been a series of bitter exchanges between the parties through media outlets. Haddad has created a website, www.justiceatwhatprice.com, which he uses as an outlet for disseminating his disfavorable views of the Defendants. The Defendants, in turn, have communicated with and provided documents to a trade publication known as THE FUNERAL MONITOR, which subsequently published a series of critical articles about Haddad. Accordingly, Judge Locke issued a protective order on October 28, 2004 requiring that the parties not release to the public any material obtained through discovery. Shortly thereafter, the Defendants filed an Emergency Complaint for Contempt against Haddad alleging violations of this order. The Court dismissed the complaint on February 17, 2005.
On June 13, 2005, the Defendants filed another Emergency Motion for a Protective Order and brought a Renewed Complaint for Contempt. In the motion, the Defendants sought to bar Haddad’s attendance at certain depositions and to prohibit Haddad from reading the transcripts. In the complaint, the Defendants again alleged violations of the October 28th order. On June 28, 2005, Judge Fecteau denied the motion and declined to issue a summons on the renewed complaint. The Court then clarified that the protective order applies only to information obtained through discovery, but warned Haddad against releasing financial information of Nordgren in a press conference Haddad had planned.
On.September 21, 2005, the Defendants filed the present Emergency Motion for Preliminary Injunction. In this motion, the Defendants seek an order instructing Haddad to take down his website and restraining him from making disparaging remarks about the Defendants. Also, Defendants again allege violations of the October 28th protective order.
DISCUSSION
Though captioned as a motion for preliminary injunction, the Defendants’ motion actually presents the Court with three different issues to address. The first concerns allegations that Haddad is in contempt of the Court’s October 28th protective order. The second is the motion for preliminary injunctive relief. The third and final issue is a new claim based on 239 C.M.R. 3.13(20) that seeks to enforce the Code of Conduct. These issues are respectively addressed below.
1) Contempt
In evaluating an allegation of contempt, the Court must find “clear and undoubted disobedience of a clear and unequivocal command.” Lynch v. Police Comm’r of Boston, 51 Mass.App.Ct. 772, 776 (2001). See also United Factory Outlet, Inc. v. Jay’s Stores, Inc., 361 Mass. 35, 36 (1972). The underlying order must be “sufficiently clear, so that the party to be bound is provided with adequate notice of the required or prohibited activity.” Lynch, 51 Mass.App.Ct. at 776.
In the case at bar, this is the Defendants’ third allegation of contempt against Haddad. In each complaint, the October 28th protective order is the command that has served as the basis of the allegation. This order prohibits the release of information obtained through discovery to persons not connected to this case. The order reads:
any materials provided in discovery — and this becomes a two-way street — shall be provided to counsel, and to the extent counsel makes it available to the parties, it is to be used solely in connection with the preparation of this case for trial. It is not to be disseminated by counsel or by the parties outside of the litigation process in this matter.
Defendants’ Exhibit A, at 8. Judge Fecteau clarified to the parties on June 28, 2005 that the order only applies to information obtained through discovery. Accordingly, it should be clear to both parties what would be required for this Court to find Haddad in contempt, namely, evidence that the Defendants released information to Haddad pursuant to the rules of discovery, and that Haddad subsequently released the same information to the public.
Here, the Defendants allege that five items posted on Haddad’s website violate the October 28th order. However, Defendants do not claim that they provided any of this material to Haddad though discovery, nor does it appear upon reading this material that it necessarily came from discovery material. Rather, the material appears to be Haddad’s opinions and information of which Haddad likely had first hand knowledge. For these reasons, this Court again declines to find Haddad in contempt.
2) Preliminary Injunction
In considering a request for preliminary injunctive relief, the Court’s task is to balance the moving party’s claim of irreparable harm and chances of success on the merits against the risk of irreparable harm to the non-moving party. See Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. However, the Court must tread cautiously where the relief sought constitutes a prior restraint on another’s right to free speech because “our law thinks it is better to let the defamed plaintiff take his damages for what they are worth than to entrust a single judge (or even a jury) with the power to put a sharp check on the spread of the possible truth.” Krebiozen Research Found. v. Beacon Press, 334 Mass. 86, 93 (1956).
In the case at bar, the Defendants seek an order requiring Haddad to take down his web site and refrain from disparaging them. The Defendants’ claim of irreparable harm is an anticipated economic loss result *232 ing from harm to their business reputation. This risk, however, is merely speculative at this point. On the other side, Haddad’s irreparable harm is the impairment of his First Amendment right to free speech. While the harm to the Defendants’ reputation could be vindicated by proving damages at trial, Haddad’s loss of free speech, even if only a temporary loss, is not redressable by monetary damages. In addition, significant and disputed questions of fact are present which cloud the Defendant’s likelihood of success at trial. Therefore, the balance of the harms weighs against the Defendants and a preliminary injunction restraining Haddad’s speech is not appropriate.
3) The Code of Conduct
At hearing, Defendants alleged that Haddad violated 239 C.M.R. 3.13(20), which states that “persons who hold an ownership interest in a funeral establishment . . . shall refrain from disparaging or defaming competitors with respect to price, service, merchandise or professional reputation.” 239 C.M.R. 3.13(20). Although fashioned as an additional basis upon which this Court could grant Defendants’ motion for preliminary injunctive relief, this argument is properly treated as a new claim. The Court has discretion to allow Defendants to amend their counterclaim, but declines to do so for the following reasons.
A careful reading of 239 C.M.R. 3.13 clearly shows that the Code of Conduct does not create an express private right of action. Rather, it states that violations “shall be grounds for disciplinary action by the Board.” 239 C.M.R. 3.13(25) (emphasis added). The Supreme Judicial Court has stated that “[w]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.” Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 547 (1998). Because the regulation expressly provides a remedy, namely, disciplinary action by the Board, the Superior Court is not the proper forum in which to pursue an action for a violation of239 C.M.R. 3.13(20). But moreover, the regulation does not appear to be on point in this instance. The Code of Conduct prohibits “disparaging or defaming competitors . . .” 239 C.M.R. 3.13(20) (emphasis added). Defendant’s argue that Haddad’s ownership of Nordgren stock makes him subject to this provision. This, however, is inapposite, as the required showing would be that Haddad and Nordgren are in some manner competing for the same customers. Defendants have not made that showing. The fact that Haddad owns Nordgren stock seems to show quite the opposite. For these reasons, this Court declines to allow Defendants to amend their counterclaim at this time.
ORDER
For the foregoing reasons, the Defendants’ motion for a preliminary injunction is DENIED.